No. 47,679

STATE OF KANSAS, *Appellee*, v. ROBERT WALKER, *Appellant*.

(535 P. 2d 924)

Opinion filed May 10, 1975.

*Michael Lerner*, of Kansas City, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic*, district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Philip L. Sieve*, chief deputy district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by Robert Walker (defendant-appellant) from a judgment of conviction for possessing heroin in violation of K. S. A. 1971 Supp. 65-2502 (Repealed 1972), K. S. A. 1972 Supp. 65-4124 (Repealed 1973), and K. S. A. 1971 Supp. 65-2519a (Repealed 1972).

The primary question on appeal hinges on the validity of the appellant's arrest.

The record discloses that on June 19, 1972, federal officers as-

signed to a special task force known as the Office of Drug Abuse Law Enforcement (ODALE) obtained a federal search warrant for the appellant's residence, located at 2404 North 11th, Kansas City, Kansas, authorizing them to search the residence for heroin. The federal agents executed the warrant that evening. When they entered the house the appellant was emerging from the bedroom area of the house into the living room. The officers identified themselves and gave the appellant a copy of the search warrant; they then proceeded to search the residence in a routine fashion.

The testimony of agent Robert Ingram (which was given outside the hearing of the jury) disclosed that while conducting the search he discovered tinfoil packets in a wastepaper basket located in a bedroom situated in the southeast corner of the residence. He further stated it was his understanding at the time the search was being conducted, and at the time of the trial, that the appellant occupied the house alone. This conclusion was supported by the following additional testimony:

". . . [T]here was evidence that day that only he lived in that house. It appeared to us that only one bedroom was occupied, and we found things in that bedroom that would lead one to believe that it was his, and I believe he was asked at that time concerning others, and I was left with the impression until right now that he was the only occupant of the house."

The tinfoil packets were labeled Exhibit 1A at the trial, and the undisputed testimony of the forensic chemist testifying on behalf of the prosecution was that powder residue contained in the packets was heroin.

After discovering the tinfoil packets the appellant was placed under arrest "for violation of the Federal Controlled Substances Act, illegal possession of controlled substances." Thereafter the appellant was transported by two agents to the Federal Bureau of Narcotics and Dangerous Drugs office in Kansas City, Missouri, where he was fingerprinted and photographed. The appellant was then taken to the Wyandotte County Courthouse. The agents advised the Wyandotte County jailers they had a federal prisoner they wished to lodge in the jail overnight for violation of federal narcotic laws.

Before admitting the appellant into the jail, the officers conducted a strip search. The appellant was advised to sit down and remove his shoes and socks. During this procedure, according to Agent Lawton, the appellant "took off his left boot, and as he was taking off his left sock he palmed something into his left hand. He

went ahead and took off his sock, and he placed it down on the floor too. And I told him after he took off his shoes and socks to turn around and put his hands up on the wall." When the appellant put his hands on the wall he had his left thumb tucked underneath the palm of his hand, so the agent "reached up and pulled out the thumb, and I could see the pill vial concealed in the palm of his hand, and I then took the pill vial." The pill vial was introduced into evidence as state's Exhibit 2A, and the undisputed testimony of the forensic chemist was that it contained heroin.

On September 18, 1972, an information was filed in Wyandotte County alleging that the appellant did unlawfully, wilfully and knowingly have under his control and in his possession a quantity of heroin.

The appellant was duly arraigned at which time he pled not guilty. A jury trial conducted on May 7, 1973, resulted in a hung jury. The trial from which this appeal is taken commenced October 29, 1973.

During the course of the trial a hearing was conducted outside the presence of the jury to determine the admissibility of Exhibit 1A (the tinfoil packets containing heroin found in the residence), and Exhibit 1, which was the lock-seal envelope the packets were placed in by the agents.

After hearing the testimony of Agent Ingram, related above, the trial court made the following ruling:

"Here is the way I view this evidence: The material elements of this crime, as far as our Kansas statutes go, is that the defendant knowingly and willfully had in his possession and under his control a quantity of heroin. Now, a legal definition, as I construe it, of possession means that the defendant had actual physical custody and control of the heroin, of a vial with heroin in it, either manually or on his person or in his clothes. Now, the fact that minute quantities of heroin, accepting the State's exhibit to be true, which I think we must, were found elsewhere in the house, I think is irrelevant to the material elements of this charge here. I must refuse Exhibit 1 and 1A at this time."

As a result of this ruling the only evidence admitted before the jury related to Exhibit 2A, the pill vial containing heroin. The jury found the appellant guilty as charged, and he has duly perfected this appeal.

The appellant's first point on appeal is that the trial court erred in admitting into evidence the heroin found on appellant at the Wyandotte County jail for the reason that there was no probable cause for the arrest resulting in appellant's presence at the jail.

Briefly stated the appellant's argument proceeds like this: The

federal officers lacked probable cause to arrest the appellant for possession of heroin, since he did not have actual possession of the heroin found in the bedroom; the arrest was invalid since it was not based on probable cause; therefore the search of the appellant at the county jail incidental to the invalid arrest was improper (citing *Chimel v. California*, 395 U. S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034) and the pill vial containing heroin was illegally seized and should not have been admitted into evidence at the trial (citing *Mapp v. Ohio*, 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684). The appellant's conclusion that actual possession of the heroin found at his residence was necessary to furnish probable cause is based upon the trial court's statements, quoted above, in suppressing the admission of that evidence.

It is to be noted the appellant does not challenge the validity of the search warrant pursuant to which the search of his home was made.

To determine whether probable cause existed for the federal agents to arrest the appellant for a violation of the Federal Controlled Substances Act we must examine the applicable statute.

21 U. S. C. § 844 (*a*) provides in part:

"It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this subchapter or subchapter II of this chapter. . . ."

Heroin is denominated a controlled substance in 21 U. S. C. § 812 (*c*) (*b*) (10).

Federal decisions construing 21 U. S. C. § 844 (*a*) have held that constructive possession of a controlled substance is sufficient to sustain a conviction. (*United States v. Bonham*, [3rd Cir.] 477 F. 2d 1137 [1973]; *United States v. Carter*, [6th Cir.] 486 F. 2d 1027 [1973]; and *Walker v. United States*, [8th Cir.] 489 F. 2d 714 [1974].)

In *Bonham*, supra, the Third Circuit Court of Appeals said:

"That 'possession' which, under the statute, creates a presumption of criminal traffic in certain narcotics can be established by a showing that the accused knowingly had the contraband under his 'control or dominion' (a situation sometime denominated 'constructive possession') even though it was not found on his person or within his immediate reach. . . ." (p. 1138.)

It was also stated that where a person is the sole occupant of a room and has the right to exclude all others from it, it may logically

be inferred that he has knowing dominion and control over objects so situated in his room that he is likely to be aware of their presence.

*Carter,* supra, and *Walker,* supra, are cases in which the defendants were found guilty of violating the Controlled Substances Act for constructively possessing contraband in their residence. This court has also held that constructive possession of a narcotic drug is sufficient to constitute possession. (*State v. Braun,* 209 Kan. 181, 495 P. 2d 1000.)

To make a lawful arrest the arresting officer must have probable cause to believe that a felony has been or is being committed. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony has been or is being committed by the person to be arrested. (*State v Brown,* 198 Kan. 473, 426 P. 2d 129; and *State v. Little,* 201 Kan. 94, 439 P. 2d 387.)

We have no hesitance in concluding on the record here presented that the arrest of the appellant was valid. The federal agents had sufficient evidence to warrant a prudent man in believing that a felony had been committed by the appellant. It is not necessary that the evidence giving rise to the probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove that guilt is more probable than not; it is only necessary that the information lead a reasonable officer to believe that guilt is more than a possibility. (*State v. Lamb,* 209 Kan. 453, 497 P. 2d 275.)

The appellant next claims the trial court erred in failing to grant a mistrial because the prosecutor peremptorily struck all black jurors from the panel.

The defendant in a criminal action is not necessarily entitled to be tried by a jury with even a single member of his race thereon. (*State v. Reed,* 214 Kan. 562, 520 P. 2d 1314; *State v. Clift,* 202 Kan. 512, 449 P. 2d 1006, cert. den. 396 U. S. 910, 24 L. Ed. 2d 186, 90 S. Ct. 225; and *Lee v. State,* 204 Kan. 361, 461 P. 2d 743.) Furthermore, systematic or purposeful exclusion of members of a race from jury service may not merely be assumed or asserted—it must be established by proof. (*State v. Clift,* supra.)

In *Swain v. Alabama,* 380 U. S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, the United States Supreme Court considered a claim similar to the one presently urged by the appellant, and held that the essential nature of the peremptory challenge is that it is one exercised with-

out a reason stated, without inquiry and without being subject to the court's control. The court said:

"With these considerations in mind, we cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto*, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.

". . . The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it. Hence the motion to strike the trial jury was properly denied in this case." (pp. 221, 222.)

There being no reversible error, the judgment of the lower court is affirmed.

FROMME, J., not participating.