IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,807

STATE OF KANSAS,
*Appellee*,

v.

GREGORY STUART ROSA,
*Appellant*.

SYLLABUS BY THE COURT

1.

When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.

2.

A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference.

3.

When a defendant is in nonexclusive possession of the premises on which illegal drugs are found, the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other incriminating circumstances.

4.

When a defendant does not dispute that what turned out to be drugs were found under the defendant's control but instead attempts to provide an innocent explanation for

1

the presence of the drugs, evidence of prior drug use by the defendant is relevant and probative to prove a disputed material fact and is therefore admissible pursuant to K.S.A. 2014 Supp. 60-455(b).

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 14, 2014. Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed May 27, 2016. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Korey A. Kaul*, of the Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Adam Y. Zentner*, assistant county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: Gregory Rosa challenges his conviction for possession of methamphetamine on three grounds: (1) the evidence was insufficient; (2) evidence of his prior drug use was improperly admitted; and (3) prosecutorial misconduct. We find no reversible error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On January 27, 2011, law enforcement officers executed a search warrant for a methamphetamine laboratory in Rosa's home in Leavenworth County, Kansas. The house had four long-term residents. Rosa and Maureen Evans were in a relationship at the time and lived together in the upstairs master bedroom where they were found during the raid. Randall Smith lived in a bedroom on the main floor. Smith was found hiding behind a water heater in the basement. Joshua Sigler also lived in the house but was not present

during the raid. Brian Brice and O'rian Heckman were also in the house in a separate bedroom during the raid. Neither lived at the house, but both would sometimes "crash there." Rosa owned the home and paid the utilities. Smith, Sigler, and Evans did not lease their rooms or otherwise pay rent.

The raid occurred following an investigation into the suspicious behavior of Evans, Smith, Brice, Heckman, and Sigler, who had purchased Sudafed, a known drug precursor, multiple times throughout that month. Video from a Walmart on January 13, 2011, showed Heckman purchasing Sudafed while accompanied by Brice and Smith and then getting into a car owned by Rosa, although Rosa was not present. Video from the 14th showed Evans purchasing Sudafed. Slightly over an hour later, the video showed Brice purchasing Sudafed. On the 15th, video showed Sigler purchasing Sudafed, and then Heckman purchased Sudafed again approximately 15 minutes later.

At another store, a Walgreens, a log of pseudoephedrine purchases showed that on January 11, 2011, Sigler purchased Sudafed followed by Brice purchasing Sudafed 4 minutes later. The log showed Sigler purchasing more Sudafed on the 16th, Heckman purchasing on the 17th, and Brice purchasing on the 26th. Police had stopped Sigler's vehicle earlier that January in relation to a robbery at a pharmacy and found several stolen bottles of tincture of iodine, another substance known to be used in the manufacture of methamphetamine. Smith, Brice, and Heckman were in Sigler's vehicle during the stop.

During the raid, police officers found evidence of an active red "P"—also called "red phosphorous" or "red and black"—methamphetamine laboratory in Smith's bedroom. There, officers discovered methamphetamine in a "sludge" inside a coffee pot. Testimony established Smith was cooking red "P" methamphetamine in that coffee pot the morning of the raid. Various containers of liquid containing methamphetamine were

3

also found in Smith's closet, inside a green bag, and hidden inside the lining of a coat found in the room. Methamphetamine residue was found on a glass pie plate under Smith's bed. Much of the testimony of investigating officers was spent detailing the many items related to manufacturing methamphetamine found in Smith's bedroom. Officers also found a small plastic bag containing crystal "ice" methamphetamine residue hidden in a sunglasses case inside a dresser in a storage room used by Evans for her clothing, jewelry, and other personal items. Officers did not find methamphetamine in the common areas of the home or the master bedroom.

At trial, the State presented evidence of Rosa's prior drug use and general acquaintance with methamphetamine. Brice testified that Rosa used methamphetamine in front of him. Sigler testified that Rosa had been present at the house while he used methamphetamine and that he saw Rosa using drugs. Heckman testified that she had used drugs at Rosa's house with Rosa, Smith, Brice, Evans, and Sigler. Evans testified that she was aware of drug use at the house prior to Smith moving in. Additionally, during trial, the State asked Evans, "How did you get your meth?" and she replied, "From Greg [Rosa]." The State then repeated this, asking, "You got your meth from [Rosa]?" Evans replied, "Yes."

Smith's testimony made it clear that he had operated a methamphetamine lab that produced red "P" methamphetamine in his bedroom. Brice testified that he and Heckman were also present in the room while Smith cooked the methamphetamine. Brice himself had been present when Smith cooked 10 to 15 times. According to Brice, Smith was in the process of cooking the methamphetamine the morning the raid occurred.

Evans testified Rosa directed her to drive the others to the store while he was at work because he suspected "they were up to no good." When asked whether Rosa did not

want to be associated with the others, Evans replied, "Yes. That's why he wanted the errand running done while he was at work or not at all is what he said."

Evans further testified that Rosa had been in Smith's room, although she could not say what occurred in the room. Evans said there were times when Rosa would go with Smith into Smith's room and the door would be closed and locked. Evans also testified that she and Rosa had previously cleaned Smith's room. Evans said they discovered "[p]araphernalia and needles" as well as red marks and burn marks on the carpet while cleaning. Evans testified that Rosa had to replace the carpet because of the damage.

Additionally, there was testimony that Rosa smelled the cook in Smith's bedroom. Brice testified that once on Rosa's day off, when Smith was cooking methamphetamine, Rosa commented that he smelled something coming through the door of Smith's bedroom. Finally, Sigler testified that he told Rosa to kick Smith out because he was making methamphetamine. He told Rosa to get rid of Smith "[f]ive to ten" times, and he testified, "[Rosa] has been told on many occasions to get rid of [Smith] because of what he was doing."

The State prosecuted Rosa on the theory that he possessed the methamphetamine found in his house. The State intended to prove its case by demonstrating that Rosa owned and exercised general control over all areas in the house and that he knew methamphetamine was in the house. Rosa defended against the charge of possession primarily by attempting to establish, through witnesses and arguments of counsel, that he did not know the other residents of the house were cooking and keeping methamphetamine in his house. In other words, Rosa did not deny he owned the premises or that the drugs were found on his premises, he only denied his knowledge of and intent to possess those drugs.

5

*The evidence was sufficient.*

Our standard of review on sufficiency challenges is well known and often stated: "When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015).

As illustrated by the jury instructions, the charge Rosa was ultimately convicted of required the State to prove:

> "1. That the defendant intentionally possessed methamphetamine; and
> "2. That this act occurred on or about the 27th day of January 2011, in Leavenworth County, Kansas."

See K.S.A. 2010 Supp 21-36a06(a). Kansas law defines possession as "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2010 Supp. 21-36a01(q).

Viewing the evidence in a light most favorable to the State, we have no difficulty concluding that the evidence was sufficient to prove that Rosa owned the premises, exercised lawful and factual control over all areas of the house, and knew there was methamphetamine present in the house—most significantly, in Smith's bedroom cook operation. Rosa was in and out of Smith's bedroom contemporaneously with the cook operation; he saw the cook; he smelled the cook; and he was told repeatedly about the cook by other guests and residents of the home. The question presented by this case is

whether these facts, once sufficiently proven as they have been here, are legally sufficient to support the charge of possession.

"'A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference.'" *McClelland*, 301 Kan. at 820 (quoting *State v. McCaslin*, 291 Kan. 697, Syl. ¶ 9, 245 P.3d 1030 [2011]). Thus, we must decide whether the State presented sufficient circumstantial evidence to prove that Rosa had "joint or exclusive control over an item with knowledge of and intent to have such control." See K.S.A. 2010 Supp. 21-36a01(q). To the extent we must interpret and apply the statutory definition of possession, our review is unlimited. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

Normally, when a person is the sole occupant of a room or residence there is a logical inference of their dominion and control over the objects in that room or residence. See *State v. Walker*, 217 Kan. 186, 189-90, 535 P.2d 924 (1975). Although we allow the State to prove knowledge and intent by circumstantial evidence, when a defendant is in *nonexclusive* possession of the premises on which illegal drugs are found, the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other incriminating circumstances. *State v. Anthony*, 242 Kan. 493, 502, 749 P.2d 37 (1988).

When a vehicle or home is not exclusively occupied, we have previously looked at factors such as the "defendant's previous participation in the sale of drugs, use of narcotics, proximity to the area where drugs are found, and the fact the drugs were found in plain view." *State v. Bockert*, 257 Kan. 488, 494, 893 P.2d 832 (1995). We have noted, "[w]hile no one of these circumstances, by itself, may be sufficient to support a conviction, taken together they provide a sufficient inference of knowing possession to

7

support a verdict." 257 Kan. at 494. We have also considered a defendant's incriminating statements and suspicious behavior. See *State v. Boggs*, 287 Kan. 298, 317, 197 P.3d 441 (2008).

In *State v. Beaver*, 41 Kan. App. 2d 124, 129, 200 P.3d 490 (2009), our Court of Appeals synthesized our caselaw on what incriminating circumstances could be sufficient to establish a defendant's possession of drugs when he is in nonexclusive possession of the premises. Beaver was charged with felony possession of methamphetamine with intent to sell. While executing a search warrant, police found Beaver along with the drugs inside a house that did not belong to Beaver. The panel ruled that Beaver's mere presence in the house and proximity to the drugs found in the kitchen were insufficient to support the charge. 41 Kan. App. 2d at 132. In reaching this conclusion, the court noted that (1) Beaver was not a resident of the home where the drugs were found; (2) there was no evidence showing his belongings were found in close proximity with the seized items; (3) there was no evidence the he had ever participated in the sale of drugs; (4) and there was no evidence that the defendant exhibited suspicious or otherwise incriminating behavior. 41 Kan. App. 2d at 131-32.

Rosa's case presents a far different scenario. Rosa stipulated that he owned the home and paid the utilities. The other long-term residents did not pay rent. Rosa's status as owner creates an inference of a right to control the areas of the house. Additionally, there was ample evidence that Rosa in fact exercised actual control over all areas of the house including the room Smith used as a bedroom and a methamphetamine laboratory. Moreover, there is abundant evidence that Rosa had prior knowledge concerning methamphetamine from his own prior use and proximity to its use by others and that he knew what was going on inside Smith's room. These facts are sufficient circumstantial evidence—and create reasonable inferences—from which a rational factfinder could find

beyond a reasonable doubt that Rosa had "joint . . . control over [methamphetamine] with knowledge of and intent to have such control." K.S.A. 2010 Supp. 21-36a01(q).

*The district court did not err in admitting evidence of Rosa's prior drug use.*

Rosa next claims his conviction should be reversed because the district court erred by admitting evidence of Rosa's prior drug use in violation of K.S.A. 2014 Supp. 60-455. At the time of trial, K.S.A. 2014 Supp. 60-455 read:

> "(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.

> "(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The State contended, and the district court below agreed, that Rosa's knowledge about methamphetamine was a disputed material fact in this case to which Rosa's prior use of methamphetamine would be relevant and thus admissible pursuant to K.S.A. 2014 Supp. 60-455(b). When reviewing evidentiary determinations such as this one, we

> "must decide whether the evidence is relevant or has 'any tendency in reason to prove a material fact.' K.S.A. 60-401(b); *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008). Relevant evidence must be material and probative. Material evidence is evidence that '"has a legitimate and effective bearing on the decision of the case and is in dispute."' *State v. Garcia*, 285 Kan. 1, 14, 169 P.3d 1069 (2007). This court reviews de novo whether evidence is material. *Reid*, 286 Kan. at 505. Probative evidence is evidence that furnishes, establishes, or contributes toward proof. *State v. Martinez*, 290 Kan. 992, 1009,

9

236 P.3d 481 (2010). This court reviews the probative element of relevancy under an abuse of discretion standard. [The defendant] bears the burden of proving the court's discretion is abused. See *Reid*, 286 Kan. at 507, 512. Finally, this court must determine whether the evidence's probative value outweighs its prejudicial effect. 286 Kan. at 503. This step is also reviewed for an abuse of discretion. 286 Kan. at 512." *State v. Preston*, 294 Kan. 27, 32-33, 272 P.3d 1275 (2012).

In *Boggs*, we held that in indirect possession cases such as this one, "when a defendant does not assert that his or her actions were innocent but rather presents some other defense, there is no reason to admit evidence of other crimes or civil wrongs to prove intent." 287 Kan. at 314. We have since clarified that in *Boggs*

"[t]his court then drew what amounts to a bright-line rule that intent is not disputed if a defendant claims he or she is innocent and did not possess the drugs. The *Boggs* court held that the defendant's admission of prior drug use was not admissible when the defendant denied ever having possessed the drugs. 287 Kan. at 315-16. We explained that under those circumstances, the only purpose for admitting Boggs' statement about prior use was to improperly establish his alleged propensity for using marijuana." *Preston*, 294 Kan. at 34.

We concluded in *Preston*: "In summary, this court has adopted a rule that distinguishes between cases in which the defendant acknowledges but attempts to provide an innocent explanation for his or her actions and those in which the defendant disputes the allegations outright." 294 Kan. at 35. In other words, *Boggs* and *Preston* establish the rule that a defendant's prior acquaintance with drugs is irrelevant to any disputed material fact—and thus inadmissible—when a defendant claims that the State's allegations concerning the presence of drugs is factually untrue—*i.e.*, the defendant "disputes the allegations outright."

10

The corollary to this rule, however, occurs when the defendant does not dispute the factual basis of the State's allegations—*i.e.*, the defendant does not dispute that what turned out to be drugs were found under the defendant's control—but the defendant instead "attempts to provide an innocent explanation" for the presence of the drugs. Possible "innocent explanations" would include the claims that the defendant either was unaware of the presence of the drugs or was under the mistaken belief that the drugs were not illegal drugs but were some other lawful substance. In such cases, evidence of prior drug use by the defendant is relevant and probative to prove a disputed material fact—*viz.*, the truth or falsity of the defendant's "innocent explanation."

Rosa's case fits squarely in the latter category. Rosa did not dispute the presence of methamphetamine in his house. Instead, he attempted to persuade the jury of an innocent explanation that boiled down to Rosa's claim that he did not know Smith or Evans were keeping or making methamphetamine in the house. Rosa's primary witness called for his defense, Smith, testified—under questioning by Rosa's counsel—that Rosa did not know about his lab, he never told Rosa about the lab, and he never heard anyone in his bedroom having a conservation with Rosa about the lab. It is clear to us that Rosa's knowledge of the methamphetamine in Smith's room was a material fact in dispute. The district court properly admitted the evidence of Rosa's prior acquaintance with methamphetamine pursuant to K.S.A. 2014 Supp. 60-455(b) as "relevant to prove some other material fact including . . . knowledge."

*The Court of Appeals did not err when finding the prosecutorial error harmless.*

Finally, Rosa argues the State committed reversible misconduct when the prosecutor argued, "I'm not asking you to find him guilty of possessing the methamphetamine just because he harbored a meth lab in his home bringing it into a neighborhood of families with children living in this neighborhood." The Court of

11

Appeals found that the statement was the error but that error was harmless. The State did not cross-petition for review from the finding of error; thus, the only issue properly before us is whether the error found by the Court of Appeals was harmless. See K.S.A. 2015 Supp. 60-2103(h) (to obtain appellate review of adverse rulings, appellee must file notice of cross-appeal); *State v. Crawford*, 300 Kan. 740, 750, 334 P.3d 311 (2014). We find that it was.

Our unique harmlessness analysis in the context of prosecutorial misconduct claims considers three factors bearing on the ultimate prejudice to the defendant of the error:

"(1) whether the misconduct was gross and flagrant, (2) whether it was motivated by prosecutorial ill will, and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. No one factor is controlling." *Crawford*, 300 Kan. at 745.

At trial, during closing arguments, the prosecutor said to the jury:

"[Rosa] had every right to have control over the house, and he had every right to have control over what was going on in the house. And that means that he had control over what was in the house.

"Given he had even known about the meth, all of the different items that were found surrounding the meth lab, the reasonable conclusion is that he knew about the methamphetamine and it was within his control.

"*And what I suggest to you is I'm not asking you to find* [*Rosa*] *guilty of possessing the methamphetamine just because he harbored a meth lab in his home bringing it into a neighborhood of families with children living in this neighborhood*. I'm not asking you to do that. I'm asking you to find Mr. Rosa guilty because the evidence shows that he possessed methamphetamine in his house. That he had control over it. He

12

knew about it, and you should find him guilty for having that type of item in his control and for allowing it to continue." (Emphasis added.)

"In assessing whether gross and flagrant conduct has occurred, appellate courts should look to whether the prosecutor '"repeated or emphasized the misconduct."'" *State v. Chanthaseng*, 293 Kan. 140, 148, 261 P.3d 889 (2011) (quoting *State v. Simmons*, 292 Kan. 406, 418, 254 P.3d 97 [2011]). This was the only mention by the State of Rosa bringing methamphetamine into a neighborhood of families and children. And it does not appear to us that the remarks were emphasized. We find no evidence the comment was gross or flagrant.

Neither do we see any indication of ill will. The statement was not emphasized; it was not made in defiance of court rulings; and the prosecutor exhibited no other behavior suggesting ill will. See *State v. Phillips*, 295 Kan. 929, 945-46, 287 P.3d 245 (2012); see also *State v. Miller*, 284 Kan. 682, 719, 163 P.3d 267 (2007) (quoting *State v. McHenry*, 276 Kan. 513, 525, 78 P.3d 403 [2003]) (noting "'a prosecutor's indifference to a court's rulings, mocking of a defendant, or repeated acts of misconduct are evidence of ill will and the lack of such conduct shows that there was no ill will'").

Finally we consider "whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors." *State v. Akins*, 298 Kan. 592, 599, 315 P.3d 868 (2014).

> "Before the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 60-261 (error not ground for new trial unless justice requires otherwise) and *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (conclusion beyond reasonable doubt that the error had little, if any, likelihood of having changed the results of the trial), have been met." *Simmons*, 292 Kan. 406, Syl. ¶ 2.

In analyzing both constitutional and nonconstitutional error an appellate court need only address the higher standard of constitutional error. *Akins*, 298 Kan. 592, Syl. ¶ 3. The constitutional standard for harmless error provides:

> "[T]he error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

In addition to the lack of any gross or flagrant conduct or ill will, we are convinced the State has met the *Chapman* standard because there is no reasonable possibility the error affected the verdict. See *State v. Killings*, 301 Kan. 214, 239, 340 P.3d 1186 (2015) (citing *State v. Inkelaar*, 293 Kan. 414, 431, 264 P.3d 81 [2011]; *State v. Raskie*, 293 Kan. 906, 918, 269 P.3d 1268 [2012] [finding prosecutor's misstatement did not affect the outcome of the trial in light of the entire record]). This was a case about indirect possession. The drugs were found inside Rosa's house. The facts at issue dealt with Rosa's knowledge of their existence. Several witnesses, including Rosa's live-in girlfriend and his housemates, testified about his prior drug use and knowledge of the drug activities in his residence. The prosecutor did not misstate the law or argue facts not in evidence. The prosecutor's statement simply does not rise to the level of misconduct requiring reversal. This one, isolated, improper statement during closing arguments would have had little weight in the minds of the jurors.

Affirmed.