NOT DESIGNATED FOR PUBLICATION

No. 117,847

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRANDALE WILLIAMS SR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; RYAN W. ROSAUER, judge. Opinion filed July 20, 2018. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Thomas Hostetler*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MCANANY and BRUNS, JJ.

PER CURIAM: The trial court granted Brandale Williams Sr., a dispositional departure to probation from a presumptive prison term. At Williams' first probation violation hearing, the trial court found that Williams violated his probation, committed new crimes, and was a danger to society. The trial court then revoked Williams' probation without imposing intermediate sanctions. Williams now appeals, arguing that the trial court erred in admitting one of the State's exhibits and abused its discretion by imposing the underlying prison sentence without first imposing intermediate sanctions. Finding no merit in Williams' arguments, we affirm.

1

Williams pleaded no contest to one count of possession of methamphetamine with intent to sell. On February 22, 2016, the trial court granted Williams' motion for a downward dispositional departure and sentenced him to 18 months' probation with an underlying 40-month prison term.

The State moved to revoke Williams' probation on March 25, 2016. In its motion, the State claimed that Williams failed to remain drug free and also lied to his community corrections officer.

A memorandum from Valerie Allen, Williams' Intensive Supervision Officer (ISO), was attached to the State's first motion, which notified the trial court of an instance in which Williams refused a two-day dip for failing a urine analysis (UA). A corrections officer told Williams that because he failed a past UA, he was required to serve a two-day jail sanction. Williams denied any new drug use and requested to speak with his supervisor. His supervisor explained that the UA results would not show past usage because methamphetamines do not stay in one's system for that length of time. The supervisor also advised Williams that he had two options:  (1) serve the two-day sanction or (2) invoke his right to a probation violation hearing. Williams chose not to serve the two-day sanction and invoked his right to a hearing. Williams also refused to submit to the UA he was required to take that day.

The State filed two additional supplemental motions to revoke Williams' probation on September 15, 2016, and October 18, 2016. In those motions the State attached affidavits from Allen and Roma Larson, Williams' Unit Supervisor. The affidavits disclosed that Williams failed to report on 12 different occasions, refused to submit to 4 UAs, and tested positive for methamphetamines on at least 3 separate occasions. Williams also admitted to using methamphetamines on two separate occasions. The affidavits also revealed that the police arrested Williams on several new charges,

2

including: two counts of criminal threat, battery, aggravated intimidation of a witness, felon in possession of a firearm, possession of methamphetamine, and possession of drug paraphernalia.

The trial court held a probation revocation hearing on October 24, 2016. At the hearing, the State called only Allen to testify, and Williams testified on his own behalf. The trial court admitted five of the State's exhibits, including: a log of Williams' drug tests and results, a custody receipt of the items seized from Williams' home, two DNA swabs taken from the gun found in Williams' basement, a DNA lab report, and a list of Williams' felony convictions. The trial court also admitted two exhibits offered by Williams, which included two letters from the Veteran's Affairs (VA) offices, confirming two medical appointments.

To begin, Allen testified that although it was Williams' first revocation hearing, revocation was necessary, in part, because Williams failed 29 UAs and refused to accept the two-day, quick dip sanction. Allen also testified that while on probation, Williams accrued several additional criminal charges and failed to complete his substance abuse treatment. Allen described Williams as not amenable to probation and suggested that the trial court revoke his probation.

Allen also testified that she was present for two searches of Williams' home. During those searches, police discovered drug paraphernalia and a gun in a desk in Williams' basement. The drug paraphernalia found was a yellow baggie corner and the gun was a semiautomatic handgun.

Williams testified that he made efforts to comply with the terms of his probation but was limited in doing so because of his health issues. Williams testified to having anxiety and memory loss, gallbladder and kidney problems, migraines, and high blood pressure. While on probation, Williams attended medical visits at the VA's office.

3

Williams attributed his failure to report to his ISO was because of his health problems. Williams also attributed his refusal to take UAs to his kidney problems, claiming an inability to urinate at times. Williams also testified that he sent Allen the required documentation regarding his health conditions.

Williams testified that he voluntarily took part in a substance abuse treatment program before being convicted of his underlying crime. Then, after the court ordered substance abuse treatment, Williams attended treatment at the Central Kansas Foundation (CKF). Williams did not successfully complete either program. Williams attributed his failure to complete the CKF program to Allen. Williams testified that Allen contacted his treatment facility to notify them of his pending charges and suggested that the facility discontinue treatment, thus causing Williams' unsuccessful discharge from the program.

Williams admitted to using methamphetamine and to failing his UAs on at least 12 occasions. Williams also admitted to staying in contact with other methamphetamine users, whom he employed. When asked about the gun found in his home, Williams asserted his right against self-incrimination and did not answer the question.

Allen was called as a rebuttal witness. She testified that Williams did not provide her with notice or documentation of any of his medical problems before he violated his probation.

The trial court revoked Williams' probation and imposed his underlying sentence. In doing so, the trial court stated:

> "The first motion to revoke was filed on March 21st, 2016, not quite a month after we did sentencing. And I remember, Mr. Williams, when we did the sentencing in this case, that I told you I was giving you a chance. . . . I regret giving you the chance. You know, I remember you told me in sentencing that you use meth almost every day.

4

"And on these cases where you have a person that's addicted to drugs, if you came in here, and everything about State's Exhibit 1 was true, and that was the only issue you had . . . I would almost certainly be giving you another chance. Because I've said this before, and I will say it again, and I will tell you, I don't expect people to quit using drugs just because some judge says you have to quit using drugs. I get that. It's a lot. It's a bigger battle than that. But this is far more than you just not being able to kick a meth habit.

"You have fought this every step of the way. . . . [I]t's more than a lack of effort. It's an actual attempt to obstruct the efforts that people are making to help you. . . .

"Because, in that seven-month period, you keep coming in on violations. . . . Two of which I found you've committed [new crimes] on the firearms and . . . paraphernalia possession.

. . . .

"And so then we get to the business about the dip. You don't have to accept the dip if you don't want to. But your refusal to engage in that dip, knowing that you had violated your probation, and wanting to come to court instead to, what, admit that you did drugs? I don't get that. But it does suggest to me, partly, that you're not amenable to probation. I know, though, you're not amenable . . . You came to a few appointments, probably, and that's about what you did on probation. That's it.

"I think you're a danger to society. I think that the firearms possession and the drug paraphernalia—and the other finding I didn't make before is that you violated your probation by associating with people on probation. . . .

"I'm remanding you to the custody of the Department of Corrections to serve your underlying sentence."

*Did the Trial Court Violate Williams' Due Process Rights When It Admitted State's Exhibit 4 Without Requiring the State to Lay Any Foundation or Present Any Testimony Regarding This Exhibit?*

Although we express serious doubt as to whether Williams has established a due process of rights violations for admitting State's Exhibit 4, we will, for present purposes only, assume that he has done so. As a result, we will move to issue two of this appeal.

*Did the Trial Court Err in Finding That Williams Committed New Crimes For Purposes of Revocation?*

Williams argues that the trial court erred in finding he violated his probation by committing new crimes because the State failed to prove that Williams possessed the firearm and drug paraphernalia recovered from the basement of his home. The State responds by arguing that it met its burden of establishing Williams committed new crimes by a preponderance of the evidence.

Under K.S.A. 2016 Supp. 22-3716(b)(2), the State has the burden of establishing probation violations by a preponderance of the evidence. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). "A preponderance of the evidence is established when the evidence demonstrates a fact is more probably true than not true." *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016).

This court reviews a challenge to the sufficiency of the evidence by looking at the evidence in a light most favorable to the State. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016); see also *State v. Hagan*, No. 106,338, 2012 WL 5392105, at *3 (Kan. App. 2012) (unpublished decision) (applying this standard to probation revocation); *State v. Ingram*, No. 107,100, 2012 WL 1524578, at *1 (Kan. App. 2012) (unpublished opinion) (same). In making this determination, this court does not reweigh the evidence or reassess credibility. See *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

At the probation violation hearing, the trial court revoked Williams' probation after finding that Williams committed two new crimes of illegal possession of a firearm and drug paraphernalia. The trial court ruled that Williams violated his probation in the following way:

"The bottom line is that Mr. Williams took the stand, and was given the opportunity to tell the Court if there was anything else he wanted to say, and he didn't deny possessing the firearm, and he didn't deny possessing the drug paraphernalia. That by itself would be enough for me to make the finding that he committed two new offenses.

"I heard about the drug paraphernalia. Ms. Allen's personally there, and saw it, and that's when she discontinued the search and the police were brought in. And Officer Babcock found the paraphernalia. But she was there. And the paraphernalia possession, in conjunction with Mr. Williams' admitting that he used drugs, and the continual use of drugs, absolutely allows this Court to find that he committed the offense of possession of drug paraphernalia. Also, [the] handgun. Again, Ms. Allen testified she was there when the handgun was discovered. I'm going to find at this hearing that Mr. Williams committed the offense of felon in possession of a firearm. So he's committed two new offenses.

. . . .

"I think you're a danger to society. I think that the firearms possession and the drug paraphernalia—and the other finding I didn't make before is that you violated your probation by associating with people on probation."

After making these findings, the court revoked Williams' probation and imposed his underlying 40-month sentence.

The trial court found that Williams committed the crimes of unlawful possession of drug paraphernalia under K.S.A. 2016 Supp. 21-5709(b) and criminal possession of a firearm by a convicted felon under K.S.A. 2016 Supp. 21-6304(a). Both K.S.A. 2016 Supp. 21-5709(b) and K.S.A. 2016 Supp. 21-6304(a) require a defendant to *possess* the illegal objects at issue. K.S.A. 2016 Supp. 21-5111(v) defines possession as "having joint or exclusive control over an item with knowledge of or intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control."

The State presented the court with sufficient evidence to prove that Williams committed new crimes of illegal possession by a preponderance of the evidence. The State presented evidence that Williams was a convicted felon and a habitual drug user who failed several UAs while on probation for only one month. Additionally, Williams' drug use continued throughout the next several months of his probationary period. Allen testified that she located drug paraphernalia in Williams' home. Additionally, Allen testified that she was present when a handgun was also located in Williams' home. Williams lives in his home with only his wife, and there was no evidence presented which would suggest she was the owner of the gun or drug paraphernalia found by police. When Williams was on the stand, he did not refute possessing either item at issue. Thus, Williams implicitly conceded possession of those items. Moreover, Williams admitted to being a persistent user of methamphetamine.

Although the trial court considered Williams' failure to defend himself against the new crimes which the State accused him of committing, it did not place the burden of proof on him. Instead, the record shows that the evidence presented by the State, when considered along with Williams' criminal history, showed that "more likely than not" he possessed the previously mentioned items. Thus, viewing the evidence in a light most favorable to the State, that the trial court properly used its discretion by revoking Williams' probation.

*Did the Trial Court Err in Revoking Williams' Probation Without First Imposing Intermediate Sanctions?*

The trial court found that Williams violated his probation by committing new crimes and technical violations. The trial court also found that Williams was a danger to society. Williams argues that the trial court's findings were erroneous because the trial court incorrectly based its decision on a finding that Williams had committed two new crimes.

8

Under K.S.A. 2017 Supp. 22-3716, the trial court must impose intermediate sanctions before revoking probation and imposing an underlying sentence. The trial court may bypass intermediate sanctions if the probationer "commits a new felony or misdemeanor, or the probationer 'absconds' from supervision, or the district court 'sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction.'" *State v. Kyles*, No. 112,430, 2015 WL 5613265, at *2 (Kan. App. 2015) (unpublished opinion) (quoting K.S.A. 2014 Supp. 22-3716[c][8], [9]).

Because we previously held that the trial court properly found that Williams had committed new crimes, Williams' intermediate sanctions argument fails.

Affirmed.