NOT DESIGNATED FOR PUBLICATION

No. 120,520

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL P. WHILCHY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; KURTIS I. LOY, judge. Opinion filed October 25, 2019.
Affirmed.

*Sara S. Beezley* and *Sarah A. Mills*, of Girard, for appellant.

*Michael Gayoso Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM:  Michael P. Whilchy was convicted of possession of marijuana. On appeal, Whilchy argues that there was insufficient evidence to support his conviction. He is requesting that our court reverse his conviction. We find that the evidence presented at trial supports Whilchy's conviction and affirm the district court's ruling.

FACTUAL AND PROCEDURAL BACKGROUND

On May 19, 2016, the State charged Whilchy with misdemeanor possession of marijuana. See K.S.A. 2018 Supp. 21-5706(b)(3), (c)(3)(A). At trial, the State presented

1

evidence through the testimony of Pittsburg Police Officer Alex Henry and Jeff Ryder, a Kansas Bureau of Investigation (KBI) forensic scientist. Officer Henry testified that he arrived at a residence, responding to a domestic disturbance call. Outside the front of the residence, Officer Henry found Whilchy sitting in the passenger seat of a vehicle. While discussing the domestic disturbance with Whilchy, Officer Henry could see a clear bag of green vegetation on top of the cup holder in the center console next to Whilchy. The green vegetation appeared to be marijuana. Officer Henry asked Whilchy what was in the bag, and Whilchy responded that it looked like marijuana. The officer collected the bag and substance, eventually sending it to the KBI for testing.

Officer Henry testified that he spoke to Whilchy's girlfriend, Jessica Jones, who was standing outside the driver side of the vehicle. Jones told the officer that the marijuana did not belong to them. Jones stated she let a women that lived in their shed borrow their vehicle from time to time. When Officer Henry asked Jones if she had noticed the marijuana in the vehicle, she ignored the question. The officer also testified that the vehicle was titled in both Whilchy and Jones' names. Both Jones and Whilchy had been drinking beer. Ryder, the KBI forensic scientist testified that, after testing, he identified the substance in the bag to be marijuana.

Jones testified for the defense. Jones testified that she and Whilchy had been drinking in the vehicle outside the residence. Her recollection of the event was "fuzzy" because she had been drinking. She remembered being inside the vehicle, sitting in the passenger seat, when law enforcement was there. Jones also said the vehicle was registered in her name alone. Jones occasionally loaned the woman living in their shed her vehicle to run errands, and the woman had borrowed the vehicle a couple of days before the incident. The day of the incident, Jones and Whilchy had been drinking in the vehicle for an hour or two before law enforcement was called. Jones became upset with the woman living in their shed and called the police. Finally, Jones stated that the bag of

marijuana belonged to her. Jones admitted that she had accepted a diversion for her own charge of possession.

The district judge found Whilchy guilty of possession of marijuana, stating:

> "Here is the problem I'm having with the evidence presented by Ms. Jones, it is inconsistent with what was reported to the officer at the time of the initial contact, plus now she's telling the Court that they has been drinking heavily, and she doesn't recall a lot of what went on that day. Then she clarifies and says something different. Her testimony is inconsistent to the Court.
>
> "The fact that she was charged and entered into a diversion agreement doesn't determine who is in possession of marijuana. It is in the vicinity of where the defendant, Mr. Whilchy, was sitting. She says she was sitting there, however, the officers who were not drinking heavily that day testified otherwise.
>
> "The testimony is inconsistent. The marijuana was in the vicinity of the defendant, Mr. Whilchy, in the motor vehicle, and under Kansas case law, that's sufficient to make you guilty of possession of marijuana.
>
> "The Court so finds you guilty of possession of marijuana."

The district court sentenced Whilchy to 6 months in jail suspended to 12 months of probation.

While the notice of appeal was untimely filed, the district court allowed Whilchy to file the appeal out of time because his trial counsel passed away unexpectedly, eight days after sentencing, and could not perfect the appeal.

## DID SUFFICIENT EVIDENCE SUPPORT WHILCHY'S
## CONVICTION OF POSSESSION OF MARIJUANA?

*Standard of Review*

> "When sufficiency of the evidence is challenged in a criminal case, we view the evidence in the light most favorable to the prosecution and determine whether we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. . . . On the way to the outcome, we 'do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Ward*, 307 Kan. 245, 249, 408 P.3d 954 (2018).

*Analysis*

The only issue Whilchy raises is whether there was insufficient evidence to establish his possession of the marijuana.

Our court must decide whether the State presented sufficient evidence to prove that Whilchy had "joint or exclusive control over [the marijuana] with knowledge of and intent to have such control." K.S.A. 2018 Supp. 21-5701(q). If a person is the exclusive occupant of an area, it may be logically inferred that he or she "has knowing dominion and control over objects." *State v. Walker*, 217 Kan. 186, 189-90, 535 P.2d 924 (1975). "Although we allow the State to prove knowledge and intent by circumstantial evidence, when a defendant is in *nonexclusive* possession of the premises on which illegal drugs are found, the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other incriminating circumstances." *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016). To prove possession in a nonexclusive possession setting, the State may show other circumstantial factors, which include the "'defendant's previous participation in the sale of drugs, use of narcotics, proximity to the area where drugs are found, and the fact the drugs were found in plain view' . . . [and] incriminating statements and suspicious behavior." 304 Kan. at 434. "While no one of these

4

circumstances, by itself, may be sufficient to support a conviction, taken together they provide a sufficient inference of knowing possession to support a verdict." *State v. Bockert*, 257 Kan. 488, 494, 893 P.2d 832 (1995). Further, a conviction may be based entirely on circumstantial evidence and the reasonable inferences deduced from that evidence. *Rosa*, 304 Kan. at 433.

There was conflicting testimony as to the ownership of the vehicle in which the marijuana was found. In this case, ownership of the vehicle was not determinative. It was testified to that Whilchy and his girlfriend had been sitting in the vehicle for an hour or two before law enforcement arrived on the scene. When the police arrived, Whilchy was the sole occupant of the vehicle. At that time, Whilchy had control over whatever was in the vehicle. Essentially, he had exclusive control over the contents of the vehicle. Not only was the baggie that the officer observed in close proximity to Whilchy, it was within inches of Whilchy. Having sat in the vehicle for an hour or two and with the immediate proximity of the baggie, it is hard to imagine Whilchy was unaware of the baggie.

When the officer asked Whilchy what was in the baggie, he stated, "It looks like marijuana." This was an incriminating statement in that it indicated that he knew what marijuana looked like and that marijuana was in the baggie. When asked about the baggie, Whilchy had every opportunity to disavow any knowledge of its contents or ascribe ownership to another person. He did not.

While any of one of these facts considered on its own merits would not establish possession, all the facts considered together could lead a reasonable fact-finder to find Whilchy guilty.

Affirmed.

5

LEBEN, J., dissenting: Michael Whilchy and his then-girlfriend, Jessica Jones, spent an hour or so drinking in her car outside their home before she called police for help in evicting a woman who lived in a shed on the property. When police arrived, they found Jones standing by the car to talk to them, Whilchy sitting in the car's passenger seat, and a bag of marijuana lying on the center console in the car.

Officers charged both Jones and Whilchy with possession of the marijuana. Jones admitted it was hers and entered a diversion program. Whilchy denied it was his and was tried and convicted.

But the State must prove that Whilchy *intended* to have control of the marijuana, and that must be proved beyond a reasonable doubt. Here, while there was plenty of evidence that Whilchy knew the marijuana was there (it was in plain sight in between where he and Jones had sat drinking for an hour), there's really no basis to conclude beyond a reasonable doubt that Whilchy had anything to do with it. I would reverse his conviction.

With that overview, let's review the evidence presented in a short trial. Three witnesses testified: Jeff Ryder, a lab analyst with the Kansas Bureau of Investigation; Alex Henry, a Pittsburg police officer who had been dispatched to Jones' call; and Jones.

Ryder testified that he verified that the material in the bag was marijuana. It weighed 3.3 grams, just over one-tenth of an ounce.

Henry said he had been dispatched to a domestic dispute at a residence. He found Jones standing by a car and Whilchy sitting in the passenger seat. While speaking to Whilchy, Henry noticed a clear bag containing what looked like marijuana "in the center

console or the cup holder of the center console." Henry asked Whilchy what was in the bag. Whilchy said it looked like marijuana.

Henry gave testimony suggesting that Whilchy might have been a coowner of the car. But his testimony, which came in response to questions from Whilchy's attorney, revealed a lack of any real knowledge about the car's ownership:

"Q: Okay. In the [police] report it always refers to the car as being theirs, and would that be my client's and Ms. Jones?

"A: Yes, ma'am.

"Q: Okay. So that was their car?

"A: Yes, ma'am.

"Q: It was titled in both their names?

"A: *To the best of my knowledge, I don't recall.*

"Q: So you *think* it was titled in their names?

"A: Yeah." (Emphases added.)

Henry also asked Jones about the bag. She said she didn't know where it came from and reported that the car had been loaned to the woman living in the shed for a time. Henry testified that both Jones and Whilchy said they had been drinking in the car before he arrived.

Jones testified that she "had purchased that vehicle before I ever knew Whilchy" and that it was her car. She said she had called the police that night because of conflict

7

with a woman who was living in the shed on the property. She said that she and Whilchy had been drinking in the car for an hour or two before police arrived.

Jones said that "[i]t was my bag of marijuana," but that she had denied it that night to the officer "because I was scared." She said that she had accepted a diversion agreement for her possession of marijuana that night and that she had completed it.

We must determine whether the evidence was enough to prove Whilchy guilty beyond a reasonable doubt. Because the fact-finder (here, the trial judge) convicted Whilchy, we must review the evidence in the light most favorable to the State. We then must determine whether, based on that evidence, a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, Syl. ¶ 1, 371 P.3d 915 (2016).

The State charged Whilchy with possession of marijuana. That a small amount of marijuana was in the bag isn't disputed. The question is whether Whilchy *possessed* it.

Two people can jointly possess something—a married couple may jointly own and possesses their household furniture, for example. But "[p]ossession of a controlled substance requires specific intent to exercise control over the substance." *State v. Keel*, 302 Kan. 560, Syl. ¶ 1, 357 P.3d 251 (2015). Showing that requires "more than just the defendant's mere presence or access to the drugs." 302 Kan. 560, Syl. ¶ 2.

As with other fact questions, that intent can be proved by circumstantial evidence. *Rosa*, 304 Kan. at 433. Every case will be a bit different, but factors that can come into play include whether the defendant has used or sold the substance, how close the defendant was to where the drugs were found, whether the drugs were in plain view, and whether the defendant's behavior around the drugs was suspicious. *Keel*, 302 Kan. 560, Syl. ¶ 2.

8

To be sure, some of those factors are present here. The bag of marijuana was in plain view, and Whilchy was close to it. When asked what was in the bag, Whilchy said it "looked like marijuana." But I don't think we have proof beyond a reasonable doubt here of his intent to possess it. To explore that, let's consider a couple of similar situations.

First, let's go to a third-grade classroom. As the 20 or so students are filing back into the classroom after lunch, the teacher, sitting at his desk in the front, hears something hit the floor. As the students sit down, he goes to investigate and finds a pocket knife (forbidden in the school) on the floor just inside the classroom doorway. No student admits to having had the knife, so the teacher decides to punish the entire class by taking away the afternoon recess.

Maybe that works for a third-grade teacher, though I suspect most educators would have a better way to handle it. But there's not proof beyond a reasonable doubt that all 20 of the students intended to possess the knife. In all likelihood, only one did.

For a second hypothetical, let's take a car with five passengers. The five passengers are sitting and drinking in the car for an hour or two—and during that time, there's a bag of marijuana on the center console between the two front seats. Any of the five passengers could reach that spot, and all of the five passengers could have seen the bag sitting there while they were drinking. Is that enough to prove beyond a reasonable doubt that *all* five passengers intended to possess the marijuana? I don't think so.

So how does our situation differ? We don't have 20 students or 5 passengers; we just have 2 people in the car. Admittedly that increases the chance that either of them intended to possess the marijuana. And Whilchy knew—just as the officer did—that the substance *looked* like marijuana. But I don't think that amounts to proof beyond a reasonable doubt here.

9

Jones, not Whilchy, owned the car. (The majority concedes that despite Officer Henry's testimony that he thought the car was jointly owned, "ownership of the vehicle was not determinative.") Jones admitted the marijuana was hers, both in testimony and in response to a formal charge, to which she entered into a diversion agreement. And what percentage of the population could say that a small amount of marijuana in a plastic bag *looked* like marijuana? A high enough percentage, from their personal experience and by watching television and movies, that Whilchy's statement is only of minimal value in determining who intended to possess this bag of marijuana.

The majority does argue that once Jones stepped out of the car to wait for the officer she had called for, "Whilchy was the sole occupant of the vehicle" and then "had control over whatever was in the vehicle." But her stepping out shortly before the officer arrived doesn't alter the odds about who intentionally possessed the marijuana. And that's something the officer and the State conceded when they chose to charge both Jones and Whilchy with possession of it.

The requirement of proof beyond a reasonable doubt before anyone can be convicted of a crime is a critical part of our justice system. We must not let the standard be lowered when the crime seems minor, like possession of marijuana. Under Kansas law, that remains a class B misdemeanor, punishable by up to six months in jail. And Whilchy might have to serve six months in jail here; the court gave him a suspended six-month sentence that would have to be served if Whilchy doesn't successfully complete a 12-month probation.

I would find that the evidence did not prove Whilchy guilty beyond a reasonable doubt and reverse his conviction. I therefore dissent.