NOT DESIGNATED FOR PUBLICATION

No. 116,374

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIE A. RICHARDSON,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed January 26, 2018. Affirmed.


*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.


*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., PIERRON, J., and BURGESS, S.J.


PER CURIAM:  The State charged Willie A. Richardson with burglary and felony theft for stealing a safe from Accent Bridal and Tux. It also charged Richardson with criminal damage to property and battery against a law enforcement officer after Richardson kicked the window of a police car, slapped the hand of an officer, and pushed him in the chest. A jury convicted Richardson on all four counts. The district court sentenced Richardson to 50 months' incarceration and ordered him to pay restitution for damage to the police car and Accent Bridal's door.  Richardson appeals, arguing: (1) the district court erred in giving a multiple acts instruction on battery against the officer; (2)

1

the district court erred in instructing the jury against nullification; (3) there was insufficient evidence to support his battery conviction; (4) cumulative error deprived him of a fair trial; (5) the district court erred when it ran his misdemeanor sentences consecutively; and (6) the district court erred in setting the amount of restitution for damage to Accent Bridal's door. We affirm.

On July 27, 2015, Brittany Trevino got off work at Valley Hope, a substance abuse treatment center in Wichita, around 10 p.m. Valley Hope is about one block from Accent Bridal and Tux. Trevino's ride was running late, so two of her coworkers, Terry Roby and Cynthia Bowman, waited with her. While they were waiting, Trevino saw a bald black man wearing red gym shorts with a white stripe walk into the alcove entrance of Accent Bridal. Roby also saw the man and similarly described him as a bald black man wearing red shorts with a white stripe down the side. A little later, Trevino heard a loud bang and saw the same man carrying what appeared to be a safe. The man appeared to be having a lot of difficulty carrying it. After a short time, he dropped it and took a short break. He then picked it up and turned a corner, walking out of sight.

Eventually, the man came back around the corner without the safe and approached Trevino and her coworkers, briefly chatting with them. He headed west on foot until a police car approached from that direction, at which point he reversed course. When a second police car approached from the east, he turned around again and continued walking west in the direction of a nearby Quik Trip. Roby went around the corner to see what the man had been carrying. He found a safe in the alcove of the Valley Hope building.

Upon arriving at the scene, Officer Michael Graham saw that someone had forced in the front door of Accent Bridal. Roby approached Graham and gave a description of the man he had seen carrying the safe. He also told Graham where the safe was located. Graham searched the inside of Accent Bridal and found a crowbar.

2

Scott Bell, the owner of Accent Bridal, received a call from the security company notifying him that the store's alarm system had gone off. When he arrived at the store, he saw the door jamb had been knocked out and was lying on the floor. As Bell walked through the store with an officer, he saw that the safe was missing from one of the back offices. Officers later took Bell to identify the safe in the location where it had been found. Bell confirmed it was the store's safe.

On his way to the scene of the break-in, Officer Danny Taylor learned the suspect had left the scene heading west. Taylor found a man matching the suspect's description by a nearby Quik Trip. The man was later identified as Richardson. When Taylor initially approached Richardson, Richardson was belligerent. Taylor noticed the smell of alcohol and suspected Richardson might be under the influence of other drugs. Taylor and another officer handcuffed Richardson and took him into custody. Another officer took Trevino, Roby, and Bowman separately to Quik Trip to see Richardson. All three witnesses identified him as the man they had seen outside of Accent Bridal.

Taylor placed Richardson in the back of his patrol car. Richardson repeatedly kicked the inside of the car. He kicked the window three or four times before Taylor could remove him. Taylor noticed the window seal had been pushed out about a quarter of an inch. He requested a breath-alcohol test (BAT) van to take Richardson to jail to prevent any further damage to his patrol car. Taylor testified that officers often used BAT vans to transport intoxicated or combative suspects because the vans have a cage in the back to prevent people from damaging property.

When Taylor arrived at the jail, someone had already removed Richardson's handcuffs, and he was sitting on a bench in the officers' work area of the jail. The officers' work area had four benches for prisoners to sit on as well as a couple of desks for officers to use to do paperwork. Officers must complete paperwork as part of the

3

process of booking people into the jail. While Taylor filled in the necessary paperwork, Richardson fell asleep on the bench.

Shortly before Taylor finished, deputies brought an unruly prisoner into the jail. The commotion woke Richardson up, and he became upset. He began cussing, and he told Taylor that he needed to get into jail right away. Taylor told Richardson that he would take him into the jail soon, but Richardson only became more upset. He began walking toward the secure door that connected the officer's work area to the area where deputies actually booked people into jail. Taylor repeatedly told Richardson to sit back down, but Richardson continued toward the door.

Taylor felt Richardson was getting too close to another prisoner in the officers' work area, so he got up and placed himself between Richardson and the other prisoner. Because Richardson had ignored Taylor's multiple verbal requests to sit down, Taylor placed his hand on Richardson's shoulder and "gently" pushed down, telling Richardson to sit on the bench. In response, Richardson slapped Taylor's hand away and pushed Taylor in the chest. Taylor had anticipated that Richardson might react that way, and he immediately placed Richardson in a wrist lock, holding him until someone else could take him inside the jail. Taylor later testified that the touching was "rude" but it did not injure him.

The State charged Richardson with burglary, a severity level 7 nonperson felony; theft, a severity level 9 nonperson felony; criminal damage to property, a class B nonperson misdemeanor; and battery against a law enforcement officer, a class A person misdemeanor. Trevino, Roby, Graham, Bell, and Taylor testified at Richardson's trial. A jury convicted Richardson on all counts.

At sentencing, Richardson requested a downward dispositional departure to probation so he could receive inpatient substance abuse treatment. In support of his

4

request for departure, Richardson's defense counsel noted that Accent Bridal did not sustain significant harm from the burglary because the safe was recovered close by. He also argued that Richardson was amenable to substance abuse treatment, and he provided a substance abuse evaluation from September 2015, which recommended Richardson receive inpatient treatment. Finally, he pointed out that Richardson's prior person felonies were 24 to 39 years old. The district court denied the motion, however, finding there were no substantial and compelling reasons to depart from the presumptive sentence.

The State recommended the district court sentence Richardson to the high number for both his felony counts and run those sentences concurrently, resulting in a 34-month prison term. The State also recommended that the court run one misdemeanor count consecutive to the felony counts, which would add another 6 to 12 months to his prison term. The court did not follow the State's recommendation, and it sentenced Richardson to 32 months in prison for burglary and six months for felony theft. The court decided to run those sentences concurrently because the offenses were "interrelated." The court also sentenced Richardson to six months in jail for criminal damage to property and 12 months in jail for battery against a law enforcement officer. The court ran those sentences consecutive to his prison term because they were both "separate offenses." The result was a sentence of 50 months' incarceration. The court also ordered restitution in the amount of $63 to the City of Wichita for damage to Taylor's police car and $400 to Scott Bell for damage to Accent Bridal's door. Richardson appeals.

*Multiple Acts Instruction*

Richardson argues the district court erred when it gave a multiple acts instruction to the jury on his battery charge. The court instructed the jury: "The State claims distinct multiple acts which each could separately constitute the crime of Battery against a Law Enforcement Officer. In order for the defendant to be found guilty of Battery Against a Law Enforcement Officer, you must unanimously agree upon the same underlying act."

Richardson did not object to this instruction, but he points out on appeal that the State only presented evidence of a single battery to the jury. According to Richardson, the multiple acts instruction impermissibly informed the jury he was allegedly guilty of more than one act of battery. The State concedes there was only one act of battery but argues the instruction did not affect the jury's verdict.

When analyzing jury instruction issues, we follow a three-step process. First, we must determine whether we can or should review the issue. Second, we consider the merits to determine if an error occurred below. Third, we assess whether the error requires reversal. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015).

Our analysis in the first step directly affects the reversibility analysis at the third step. *State v. Louis*, 305 Kan. 453, 457, 384 P.3d 1 (2016). When a defendant does not object to the giving of a jury instruction, we will not reverse the verdict unless the defendant can show the giving of the instruction was clearly erroneous. K.S.A. 2016 Supp. 22-3414(3); *Pfannenstiel*, 302 Kan. at 752. As Richardson acknowledges, he did not object to the multiple acts instruction, so he must establish clear error.

As for the second step, we consider whether the instruction was legally and factually appropriate, using an unlimited review of the entire record. *Louis*, 305 Kan. at 457-58. Richardson concedes that the multiple acts instruction was a correct statement of the law. He argues, however, that the instruction was not factually appropriate because the State did not put on evidence of multiple acts of battery against a law enforcement officer.

Acts are multiple acts if they are factually separate and distinct. To determine whether acts are factually separate, Kansas courts consider several factors, including:

6

"'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.' [Citations omitted.]" *State v. Moyer*, 302 Kan. 892, 910, 360 P.3d 384 (2015).

The State concedes there appears to have been only one act of battery here because the slap and push happened almost simultaneously. Thus, the instruction was not factually appropriate.

While the district court erred in giving the multiple acts instruction, this does not necessarily mean we must reverse Richardson's verdict. Richardson must still demonstrate that giving the instruction was clear error. To do so, Richardson must firmly convince us that the jury would have reached a different verdict if the district court had not given the instruction. *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016). In evaluating whether an instruction raises to the level of clear error, we conduct an unlimited review of the entire record. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). The clear error determination must review the impact of the erroneous instruction in light of the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

Richardson claims the multiple acts instruction was prejudicial because it told the jury he was allegedly guilty of an unknown number of batteries. In order to demonstrate his point, he posits a hypothetical case in which a court gives a K.S.A. 2016 Supp. 60-455 limiting instruction when the court has not admitted any evidence of other crimes. Richardson argues this would be highly prejudicial because the court is telling the jury that the defendant is guilty of more than one crime. He reasons, though, the limiting instruction at least tells the jury how to use any evidence of other crimes. According to Richardson, the multiple acts instruction is more prejudicial because it similarly suggests

that the defendant is guilty of more than one crime but does not give guidance on how the jury may consider any such evidence.

Even if Richardson were correct that giving the multiple acts instruction implied he was guilty of more than one act of battery, it would not have amounted to clear error looking at the entire record. The State did not present any evidence to suggest that any battery took place other than the one at the jail. The State did not suggest in its arguments that multiple batteries took place. As for the other instructions, the district court instructed the jury that it must "decide the case by applying these instructions to the facts as you find them," and the jury's fact-finding should be based on admitted evidence. The court also instructed the jury that it should presume Richardson was not guilty unless the State proved beyond a reasonable doubt that he was guilty. As the State points out, the multiple acts instruction informed jurors that they must unanimously agree on a single act of battery in order to find Richardson guilty.

As for the evidence of Richardson's guilt, Officer Taylor testified that Richardson was belligerent at the time of the incident. Taylor said he gently pushed down on Richardson's shoulder, but Richardson responded by slapping his hand away and pushing him. Richardson did not present any evidence to directly controvert Taylor's testimony. Rather, his defense counsel argued that Taylor initiated contact, and Richardson was simply reacting. Looking at this evidence, the other instructions, and counsel's arguments, the erroneous multiple acts instruction likely did not impact on the verdict in Richardson's case, and Richardson has failed to establish clear error.

*Jury Nullification Instruction*

Richardson argues the district court erroneously instructed the jury against nullification. At the beginning of voir dire, the court explained this was a criminal case and the State had the burden of proof. In explaining reasonable doubt, the court told the

8

jury: "If you have a reasonable doubt, your obligation is to vote not guilty, and if you have no reasonable doubt and you think the State has met their burden, your obligation becomes to vote guilty." Shortly thereafter, the court stated: "It's only unless and until you are convinced beyond a reasonable doubt that the State has met its burden that the presumption leaves the defendant, Mr. Richardson, and your obligation then becomes to vote guilty."

After swearing in the jury, the district court gave preliminary instructions: "First of all, it is important that you understand the duties of the jury and the duties of the judge in this trial. The jury is the judge of the facts. In other words, you must determine guilt or innocence." In its written and oral instructions after the close of evidence, the court instructed the jury in Instruction 1: "You must decide the case by applying these instructions to the facts as you find them." The court also instructed the jury in Instruction 14: "Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions." Richardson requested both Instruction 1 and Instruction 14.

Richardson argues the district court's instructions and comments erroneously instructed the jury against nullification. He specifically points to Instruction 14, which stated: "Your verdict *must* be founded entirely on the evidence admitted and the law as given in these instructions." (Emphasis added.) Richardson contends that this instruction, along with other comments made by the district court, improperly informed the jury that it could not legally nullify the verdict. He further argues that, but for this error, the jury would likely have nullified.

The State responds that Richardson proposed the instruction at issue, so the invited error doctrine precludes review of this issue. The State also asserts the issue is without merit as the court in *State v. Mitchell-Boyles*, No. 114,799, 2017 WL 129949, at *12 (Kan. App. 2017) (unpublished opinion), *rev. denied* 306 Kan. __ (June 29, 2017), has

9

already found the instruction at issue to be legally appropriate. The State argues that any error in giving the instruction was harmless because there was overwhelming evidence of Richardson's guilty.

Before reaching the merits of this issue, we must first determine if Richardson's claim is barred by the invited error doctrine. Under the invited error doctrine, a litigant may not invite error at the district court level and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). The invited error doctrine applies only when a party both fails to object and invites the error by other actions. Appellate courts will review an invited error only if it is structural error. *State v. Logsdon*, 304 Kan. 3, 31, 371 P.3d 836 (2016). Whether the doctrine applies presents a question of law, and this court generally exercises unlimited review over questions of law. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016).

Richardson requested the instruction at issue, and he did not object to its use. He also does not claim that it is structural error. See also *State v. Bradford*, No. 115,008, 2016 WL 7429318, at *3 (Kan. App. 2016) (unpublished opinion) (finding allegedly instructing jury against nullification is not structural error), *rev. denied* 306 Kan. ___ (August 23, 2017). Presumably, then, the invited error doctrine bars review of this claim.

Richardson urges us to review the issue anyway, relying on *State v. Hargrove*, 48 Kan. App. 2d 522, 293 P.3d 787 (2013). The *Hargrove* court held that it may relax the invited error doctrine if defense counsel negligently requests a jury instruction that compromises the defendant's constitutional rights. It also held, however, that we will not presume negligence rather than a tactical decision from a silent record. 48 Kan. App. 2d at 551-54.

The record in this case is silent as to why defense counsel requested this instruction. Richardson contends "the record shows there was no strategic or tactical

reason for Mr. Richardson's counsel to not object." Just because there was no apparent tactical reason to request the instruction, though, does not necessarily mean defense counsel acted negligently. As the *Hargrove* court stated: "There may be factors informing [defense counsel's] choice that are obscure or wholly invisible in the appellate record." 48 Kan. App. 2d at 551. Without evidence in the record that defense counsel acted negligently, the invited error doctrine still applies and prevents us from reviewing this issue.

Even if the invited error doctrine did not bar this issue from review, it fails on its merits. Richardson argues Instruction 14 was an incorrect statement of law. He contends that juries have an inherent right to nullification, but the use of the word "must" rather than "should" in Instruction 14 conveyed to the jury that nullification was not an option.

In *Silvers v. State*, 38 Kan. App. 2d 886, 888, 173 P.3d 1167 (2008), the court explained jury nullification as follows:

> "'A jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.' [Citation omitted.]"

Our Supreme Court has held that juries have the inherent power to nullify a verdict, but the district court must not instruct on jury nullification. *State v. Naputi*, 293 Kan. 55, 65-66, 260 P.3d 86 (2011); *State v. McClanahan*, 212 Kan. 208, Syl. ¶¶ 3, 4, 510 P.3d 153 (1973). Conversely, our Supreme Court has also held that the district court may not instruct against nullification or compel a jury to convict. *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014).

Richardson claims juries have an inherent *right* to nullification, but Kansas courts appear to have only recognized that juries have the *power* to nullify verdicts. See, e.g.,

11

*State v. Stinson*, No. 112,655, 2016 WL 3031216, at *3 (Kan. App. 2016) (unpublished opinion) ("Nullification rests on an unchecked power of the jurors, not a legal right belonging to them or to a defendant."), *rev. denied* 306 Kan. __ (September 28, 2017).

Despite Richardson's claims to the contrary, Instruction 14 neither encourages nullification nor forbids it. The challenged language in the instruction is taken directly from PIK Crim. 4th 68.010. The instruction is consistent with the statutory directive in K.S.A. 22-3403(3), which states: "When the trial is to a jury, questions of law shall be decided by the court and issues of fact shall be determined by the jury." It is also consistent with K.S.A. 2016 Supp. 60-247(d), which states: "The jurors must swear or affirm to try the case conscientiously and return a verdict according to the law and the evidence." The Court of Appeals has repeatedly held that the instruction at issue does not impermissibly preclude jury nullification. See *State v. Trotter*, No. 114,753, 2017 WL 3668908, at *3-5 (Kan. App. 2017) (unpublished opinion), *rev. granted on other issue* 306 Kan. ___ (August 30, 2017); *State v. Ulmer*, No. 114,315, 2016 WL 7428362, at *8-9 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. ___ (September 28, 2017).

The *Mitchell-Boyles* court has also specifically rejected Richardson's argument that the use of the word "must" in the instruction was improper. 2017 WL 129949, at *12. Richardson acknowledges that the court in *Mitchell-Boyles* rejected the argument he raises here. He maintains, however, that *Mitchell-Boyles* is distinguishable when one looks at the record as a whole in his case. He points to the district court's comments to the jury that if the State meets its burden of proof, the jury is obligated to vote guilty.

As the State notes, however, our Supreme Court has already addressed an argument regarding similar comments. In *State v. Carter*, 305 Kan. 139, 159, 380 P.3d 189 (2016), the district court told prospective jurors before voir dire that if the State met its burden of proof, "'the presumption [of innocence] then leaves the defendant and then

your obligation becomes to vote guilty, if you are convinced beyond a reasonable doubt.'" The *Carter* court held that the district court's comments were erroneous, but it was not clear error because the comments occurred before voir dire began and the district court properly instructed the jury regarding reasonable doubt at the close of evidence. 305 Kan. at 160.

The district court's comments here are almost identical to the court's comments in *Carter*. The district court also gave an appropriate reasonable doubt instruction, based on PIK Crim. 4th 51.010, to the jury at the close of evidence. Richardson does not explain how a legally appropriate instruction combined with erroneous comments later corrected by proper jury instructions leads to clear error. He also does not provide any further argument on the other instructions he highlighted in his brief.

Moreover, the evidence of Richardson's guilt was overwhelming. Two eyewitnesses identified him as the man who broke into Accent Bridal and took the safe. A third eyewitness identified him at the scene. Officer Taylor's testimony established the criminal damage and battery charges, and defense counsel did little to damage his credibility on cross-examination.

Despite the evidence of guilt, Richardson argues that the jury likely would have nullified for a variety of reasons, including abandonment of the safe and the relatively minor damage to the window of Taylor's patrol car. Richard is, of course, presuming that the jury at his trial was willing to ignore evidence of his guilt to nullify his verdict. If this were so, however, the jury would also presumably not feel constrained by the instructions it intended to disregard. See *Trotter*, 2017 WL 3668908, at *5 (discussing paradox of proposed remedy for challenged instruction). Thus, this argument does not establish clear error, and Richardson's claim is without merit.

13

*Sufficiency of the Evidence*

Richardson argues the State did not provide sufficient evidence that he battered Officer Taylor. He asserts the State provided evidence of Taylor's subjective opinion that Richardson made physical contact in a rude manner, but it did not establish that a reasonable onlooker would believe Richardson had acted in a rude, angry, or insulting manner. According to Richardson, a reasonable onlooker would have concluded that he was reasonably responding to Taylor's rough treatment. The State responds that if looked at in a light most favorable to the State, the evidence was sufficient to establish Richardson committed battery against the officer.

"'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citations omitted.]" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

The jury convicted Richardson of battery against a law enforcement officer. K.S.A. 2016 Supp. 21-5413(c)(1)(B) defines battery against a law enforcement officer as "battery as defined in subsection (a)(2) committed against a . . . uniformed or properly identified state, county or city law enforcement officer . . . while such officer is engaged in the performance of such officer's duty." Subsection (a)(2) defines battery as "knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 2016 Supp. 21-5413(a)(2). In determining the manner in which the defendant acted, the *Cooper* court applied an objective standard from the point of view of a reasonable onlooker. *State v. Cooper*, No. 113,401, 2016 WL 4585096, at *3. (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. ___ (May 24, 2017). The

14

subjective perspective of the defendant, victim, or witnesses is not controlling. See 2016 WL 4585096, at *3; *In re C.T.*, No. 107,841, 2012 WL 5205752, at *4-5 (Kan. App. 2012) (unpublished opinion).

Richardson contends that the evidence presented at trial does not establish that he touched Taylor in a rude, insulting, or angry manner from the point of view of a reasonable onlooker. Rather, he asserts it only establishes that the touching was rude from a subjective standard, relying on Taylor's perspective. He then posits a number of speculative, subjective interpretations of the event based on the particularities of Richardson's condition or the experiences of his imagined onlooker. For example, he suggests a reasonable onlooker in this case would have been someone in the officer's work area, possibly someone who had been in Richardson's shoes or had often seen similar occurrences. According to Richardson, this onlooker would have seen "a 53-year-old sweaty, shirtless black man who was riding a roller coaster of emotions." According to Richardson, this proposed onlooker would have seen the contact and concluded an upset man was responding defensively to an officer's rough handling.

While any of Richardson's suggested scenarios may be possible, the existence of alternative outcomes is not the standard of review for sufficiency of the evidence. Rather, we must determine if the evidence supports the conviction when viewed in a light most favorable to the State. Viewed this way, the evidence was sufficient to support a conviction for battery. Officer Taylor testified that while he was filling out paperwork, Richardson became belligerent and began cussing. Richardson got up and moved toward the secured door between the officer's work area and the booking area. Taylor repeatedly asked Richardson to sit down, but he refused to do so and continued to cuss and yell. Taylor said he placed his hand on Richardson's shoulder and gently pushed down, again telling Richardson to sit down. Richardson responded by slapping his hand away and pushing Taylor in the chest. Taylor testified that the physical contact was rude. From the perspective of a reasonable onlooker, slapping and pushing someone after yelling,

15

cussing, and acting belligerently would appear rude, insulting, or angry. Therefore, the State provided sufficient evidence for a rational fact-finder to find Richardson guilty of battery against a law enforcement officer.

*Cumulative Error*

Richardson argues that even if none of the previous three errors on its own requires reversal, the combined effect of the errors deprived him of a fair trial. The test for cumulative error asks whether the totality of the circumstances establish that the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. In assessing the cumulative effect of errors during trial, we examine the errors in the context of the entire record, considering how the district court dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). See also *State v. Walker*, 304 Kan. 441, 457-58, 372 P.3d 1147 (2016). The court will find no cumulative error when the record fails to support the errors defendant raises on appeal. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015).

Cumulative error did not deprive Richardson of a fair trial. The only errors here were the giving of the multiple acts instruction and the district court's comments to the jury about reasonable doubt before voir dire. The multiple acts instruction did not affect the verdict, however, and the final jury instruction on reasonable doubt corrected any error introduced by the court's comments. These errors were not interrelated, and neither would have compounded the other. The State presented a strong case for Richardson's guilt on all counts.

*Consecutive Sentences*

Richardson challenges his sentence. He argues the district court abused its discretion when it ran his misdemeanor sentences consecutive to his felony sentences. He contends the court relied on incorrect law and facts in determining his sentence, and no reasonable person could agree with the sentence the court imposed. The State responds that Richardson has taken the district court's comments out of context, and his sentence was not unreasonable.

A district court has discretion to determine whether a sentence should run concurrent with or consecutive to another sentence. K.S.A. 2016 Supp. 21-6606(a); K.S.A. 2016 Supp. 21-6819(b); *State v. Mosher*, 299 Kan. 1, 2, 319 P.3d 1253 (2014). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Marshall*, 303 Kan. at 445. The party asserting the district court has abused its discretion bears the burden of proof. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015), *cert. denied* 137 S. Ct. 164 (2016).

Richardson's presentence investigation (PSI) report indicated he had a criminal history score of A. It showed he had juvenile adjudications for first-degree murder and aggravated robbery from 1977. He also had two adult convictions for person felonies: aggravated robbery in 1984 and robbery in 1992. In addition to his two person felony convictions, he had two person misdemeanor convictions—battery/domestic violence in 1997 and criminal restraint in 2014.

Richardson faced a presumptive prison sentence of 30, 32, or 34 months for his burglary charge. For his felony theft charge, he faced a presumptive sentence of 5, 6, or 7 months of probation. The maximum jail sentence for his misdemeanor criminal damage

17

charge was 6 months, and the maximum jail sentence for his misdemeanor battery charge was 12 months. K.S.A. 2016 Supp. 21-6602(a)(1) and (2).

At sentencing, Richardson's counsel argued for a downward dispositional departure. He pointed out that if the district court did not include Richardson's person felonies when calculating his criminal history score, his score would only be an E. The following colloquy then occurred:

> "THE COURT: If I ignored all his criminal history, he would be a criminal history I. But the fact is that is his criminal history. That is what he has done with his life. That is what he carries around with him, and every time he commits a new offense, he is a criminal history A.
>
> "[DEFENSE COUNSEL]: I understand that, Your Honor, but this is a recognized factor, age of the prior and the fact that he doesn't have similar priors for a period of over 24 years. I think that is substantial, and I'm asking the Court to view that as substantial and compelling.
>
> "The fact that he is no longer a person who presents such a violent risk to society, that is borne out by the nature of these convictions in the last 24 years.
>
> "THE COURT: Well, criminal restraint, entry number 24, albeit, it's a person misdemeanor. DV battery in '96, '97 was the conviction date. And Counts 3 and 4 are criminal damage to property, where he kicked out or damaged the back window or window frame of the Wichita Police Department's patrol vehicle and battery of an LEO when he shoved the police officer in the booking desk or booking facility while being booked into jail. It's just a consistent demonstration of his behavior. He is a public safety issue, even if he wasn't criminal history A, but I don't see any reason, substantial or compelling, to deviate from the presumed disposition."

Richardson argues these comments indicate the district court relied on incorrect law in sentencing him. The court stated it did not see any substantial or compelling reason to depart from the presumptive disposition in this case. According to Richardson, this has no relevance in misdemeanor sentencing because there is no presumptive disposition for misdemeanors. Instead, the district court should have sentenced him in

18

accordance with K.S.A. 2016 Supp. 21-6601, which requires the court to deal with defendants "in accordance with their individual characteristics, circumstances, needs and potentialities."

Richardson is correct that there is no presumptive sentence for misdemeanors. K.S.A. 2016 Supp. 21-6602; K.S.A. 2016 Supp. 21-6803(q). As the State points out, however, the court's comments came during a discussion of Richardson's motion for a dispositional departure, including for his felony burglary charge. In order to depart from the presumptive prison sentence for that felony, the court would have had to find substantial and compelling reasons. K.S.A. 2016 Supp. 21-6815(a). The court's comments appear to be in response to defense counsel's arguments regarding substantial and compelling reasons to depart from Richardson's presumptive felony sentence. Thus, there is no indication the court relied on incorrect law in sentencing Richardson for his misdemeanors.

Richardson also claims the district court relied on incorrect facts in sentencing him. He points to the court's statement that "he shoved the police officer in the booking desk or booking facility while being booked into jail." Richardson first asserts he did not push the officer into a desk. As the State argues, however, the court likely misspoke when it said desk, because it immediately corrected itself by saying "booking facility."

Richardson also argues he was not in booking at the time of the battery; he was waiting for Officer Taylor to finish paperwork so he could be booked into jail. This is splitting hairs. While Taylor was not actually booking Richardson into the jail, he was completing paperwork that had to done as part of the entire process. Additionally, even if the court was not technically correct, the record does not suggest the court focused on the timing or location of the battery in determining Richardson's sentence. Thus, it is not clear what effect, if any, this mistake of fact would have had on Richardson's sentence.

19

Richardson also takes issue with the district court's comment that, "it's just a consistent demonstration of his behavior." Richardson contends his criminal history does not show a consistent demonstration of person crimes. According to his PSI report, though, Richardson was adjudicated for first-degree murder and aggravated robbery in 1977, convicted of aggravated robbery in 1984, convicted of robbery in 1992, convicted of battery/domestic violence in 1997, and convicted of criminal restraint in 2014. He had committed six person crimes over a span of 37 years, with his most recent one occurring only a few years ago. There is substantial competent evidence to support the conclusion that Richardson showed a consistent demonstration of person crimes.

Richardson also argues the evidence does not support the district court's conclusion that he is "a public safety issue, even if he wasn't criminal history A." Richardson interprets this comment to mean his behavior on the night of the incident made him a public safety threat. He argues the evidence does not support this conclusion because he was not in public at the time he committed criminal damage and battery. What makes Richardson a public safety threat, however, is the nature of the crimes, not the exact location in which they occurred. To conclude otherwise would mean that only people who commit crimes of violence in public areas could be considered public safety threats.

Finally, Richardson contends his sentence was unreasonable because neither of the parties suggested the sentence the district court imposed. This does not establish unreasonableness, though, because district courts may impose sentences independent of any sentencing recommendation. *State v. Chetwood*, 38 Kan. App. 2d 620, 624-25, 170 P.3d 436 (2007). At the sentencing hearing, the district court explained that Richardson's criminal history as well as his behavior on the night in question indicated he was a public safety risk, and it sentenced Richardson to multiple consecutive sentences. A reasonable person could agree with the district court's decision. Furthermore, it is consistent with K.S.A. 2016 Supp. 21-6601, which states "dangerous offenders shall be correctively

20

treated in custody for long terms as needed," and offenders should only be sentenced to probation if it is "not detrimental to the needs of public safety." Therefore, the district court did not abuse its discretion in sentencing Richardson, and we affirm.

*Restitution*

Finally, Richardson contends the district court abused its discretion when it set the amount of restitution for Scott Bell and Accent Bridal. He asserts the court improperly relied on the State's statements in setting the amount, and there is no reliable evidence to support it. The State counters that reliable evidence supports the amount of restitution because Bell provided testimony and a victim statement regarding the cost of repairing Accent Bridal's door.

Bell provided some testimony regarding the damage to Accent Bridal's door but never gave a specific amount regarding the cost of repairs. At trial, he testified that "the whole door [jamb] was knocked clear out and [lying] on the floor" when he arrived at the store after the break-in. He also testified "[t]he door was completely broken in." At the preliminary hearing, Bell testified that he repaired the door himself because the repair costs would not have met the $500 deductible for his insurance.

The PSI report recommended a restitution amount of $400 for Scott Bell of Accent Bridal. At the sentencing hearing, the State requested $400 in restitution for Accent Bridal "not for any property, because obviously it was returned, but the damage to the door [frame]." Richardson's counsel stated that "[t]here was very little, definitely not $400 worth of monetary harm," and he did not understand how the materials used to fix the door jamb totaled $400. He told the court he had "seen the itemization" but he thought it "sound[ed] like a windfall." The district court ultimately ordered restitution in the amount of $400 for Bell.

21

We review the amount of restitution and the manner in which it is made to a victim under an abuse of discretion standard. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). "'Although the rigidness and proof of value that lies in a civil damage suit does not apply in a criminal case, the court's determination of restitution must be based on reliable evidence which yields a defensible restitution figure.' [Citation omitted.]" *State v. Hunziker*, 274 Kan. 655, 660, 56 P.3d 202 (2002). A district court abuses its discretion if it enters an order of restitution without any evidence to support it. *State v. Cole*, 37 Kan. App. 2d 633, 637, 155 P.3d 739 (2007).

Richardson argues the district court determined the amount of restitution based solely on comments made by the State at sentencing, and there was no other evidence to support the restitution amount. Richardson is correct that the State's comments were insufficient to support the restitution order because statements of counsel are not evidence. See *Cole*, 37 Kan. App. 2d at 636-37 (finding district court abused its discretion by relying solely on State's representations in setting restitution amount). However, Richardson is incorrect that this was the only information provided to support the restitution amount.

On the same page of the PSI report that recommended the $400 restitution amount, it also said: "Copies of any victim's statements or requests for restitution will be included in the court's copy of the Presentence investigation if received by this office." The State requested an addition to the record, adding Scott Bell's statement of loss. Bell's statement listed $400 as the cost of fixing the door and the door jamb. Contrary to Richardson's assertion, the record indicates there was other evidence to support the amount of restitution. Additionally, in *State v. Vandorn*, No. 109,640, 2014 WL 2871320, at *8 (Kan. App. 2014) (unpublished opinion), the court upheld restitution amounts supported only by a victim's statement of loss. On appeal, Richardson does not challenge the reliability of Bell's statement of loss, thus, any such argument is waived and abandoned. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016).

22

*Conclusion*

Richardson has brought a number of challenges to both his convictions and his sentence, but they are all without merit. The district court erred in giving a multiple acts instruction on battery, but the record as a whole establishes the error did not affect the verdict. Richardson's claim that the court erroneously instructed the jury against nullification is invited error but also fails on the merits. The State provided sufficient evidence under an objective standard that Richardson acted in a rude, insulting, or angry manner when he slapped Officer Taylor's hand and pushed him. The district court did not abuse its discretion in running Richardson's misdemeanor sentences consecutively, nor did it abuse its discretion in setting the amount of restitution because Bell's statement of loss supported the amount.

Affirmed.