NOT DESIGNATED FOR PUBLICATION

Nos. 116,502
116,503

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA MATTHEWS,
*Appellant*.


MEMORANDUM OPINION


Appeal from Douglas District Court; BARBARA KAY HUFF, judge. Opinion filed February 9, 2018. Affirmed.


*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.


*Colin Shaw*, legal intern, *Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before POWELL, P.J., STANDRIDGE, J., and STUTZMAN, S.J.


PER CURIAM: Joshua Matthews appeals his convictions for three counts of battery of a law enforcement officer. He argues there was insufficient evidence to prove he had the requisite culpable mental state to commit his crimes and also contends the district court abused its discretion by ordering consecutive service of his sentences. After examining Matthews' claims, we find no error and affirm.

1

FACTS AND PROCEDURAL BACKGROUND

On June 2, 2015, Matthews was an inmate in the Douglas County Jail. Deputy Mario Godinez of the Douglas County Sheriff's Department was told that Matthews had extra towels in his cell. Godinez remotely opened Matthews' cell and asked him through the intercom to bring the towels down to the control room. Matthews did not comply. After about 15 minutes, Godinez went to Matthews' cell to get the towels.

When he got to the cell, Godinez asked Matthews for the extra towels. Matthews told Godinez he could take the towels lying on the floor of the cell. As Godinez reached down to pick up the towels, Matthews began hitting him on the head. Godinez attempted to move out of the cell while covering his face and head with his hands to protect himself from Matthews. Godinez said, "Matthews, stop," but the blows continued. The struggle continued down the hallway and Godinez attempted to use his taser on Matthews but missed and Matthews continued to hit Godinez. Godinez then used his taser to "drive-stun" Matthews in the torso area. Matthews stopped and said, "Okay, you don't need that anymore, I'm done," then ran to his cell and sat down. Godinez returned to the entry of Matthews' cell and Matthews said, "That's what you guys get for messing with my asshole." Godinez suffered bruises to his ear, forehead, and face, had irritation in his left eye, and injuries to his knee and elbow.

On August 27, 2015, Officers Thaddeus Longenecker and William Falley escorted Matthews to a shower. The deputies placed Matthews in the shower, locked the shower door, and removed his handcuffs. After Matthews showered, the deputies replaced the handcuffs and unlocked the door. Matthews then pushed open the shower door and hit Longenecker on the face with his handcuffs. Longenecker grabbed the chain on Matthews' handcuffs and the officers took Matthews to the ground, holding him down until additional officers arrived. While he was held on the floor, Matthews continued to struggle—kicking, laughing, and generally attempting to get away. Several times

2

Matthews said "Are you laughing now, Officer Longenecker?" Matthews also said he "took [it] easy on Godinez because he was an old man," but he would not do the same for Longenecker. During the struggle, Longenecker suffered a broken nose. Falley was struck in the cheek and jaw, which knocked out a filling, and he had scratches and open wounds on his hands from the struggle on the concrete floor.

From these incidents, the State brought two separate criminal cases against Matthews. In 15CR525, the State charged Matthews with one count of battery of a law enforcement officer, a severity level 5 person felony, for his attack on Godinez. In 15CR941, the State charged two counts of battery of a law enforcement officer for his attacks on Longenecker and Falley.

Matthews originally gave notice that he intended to assert a defense of lack of mental state due to a mental disease or defect and, over the course of the proceedings, two competency evaluations were conducted. Each found Matthews was competent. In January 2016, Larned State Hospital completed a competency evaluation of Matthews and determined he was competent to stand trial. Matthews stipulated to the findings. Bert Nash Community Mental Health Center later completed another competency screening. The report stated Matthews did not demonstrate signs or symptoms of mental illness that would make him unable to understand the nature and the purpose of the proceedings or make him unable to assist in his defense. Matthews also stipulated to these findings and the court found him competent.

At a bench trial on August 10, 2016, witnesses testified to the facts of each altercation and Matthews testified in his own defense. Matthews testified law enforcement officers were using "some kind of technology or something to sexually harass and assault" him. Matthews said they used "some kind of wave phenomena or something" on his "asshole" and his "dick," and they had technology to hear his thoughts. He had dreams about the police "blowing . . . on [his] ass." He testified officers used a

3

remote device to electrocute him while he was sleeping and that he was poisoned. Matthews said he felt he had to protect himself because he was being harassed and provoked.

Matthews testified he told Godinez over the intercom what was going on and Godinez laughed at him. He thought Godinez was coming into his cell to harass him. Matthews lashed out at Godinez to get the officers to stop "poking" him in the "dick" and "ass" because he had tried talking to them and filing a grievance and didn't know what else to do. When asked if he wanted or intended to hurt Godinez, Matthews responded, "I mean, I just—yeah." Matthews acknowledged that Godinez was "a little guy," while Matthews weighed 200 pounds and thus Matthews had to be the one to stop the altercation. He acknowledged he punched and pushed Godinez out of the cell and that he had been violent toward Godinez "all that morning."

Matthews testified Longenecker had come up to his cell previously and moved his hands in a way to insinuate fighting and Longenecker also had been laughing at him. A couple of days before the altercation, Matthews said Falley came up to his cell and asked if Matthews was "in the closet." Matthews said he then "got kind of violent with him." Defense counsel asked the court to find that Matthews was justified in his actions in both cases.

The court found Matthews guilty of the charges in both cases and imposed controlling sentences in each case of 130 months in prison, to be served consecutively. Matthews timely appeals and the cases have been consolidated for our review.

ANALYSIS

Matthews presents two issues, arguing: (1) the State's evidence was insufficient to prove he formed the required criminal intent for the crimes charged in each case; and (2)

4

the district court abused its discretion in ordering consecutive sentences for his two convictions.

*Criminal intent*

"'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.'" [Citations omitted.] *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). A verdict may be supported by circumstantial evidence, if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). A conviction of even the gravest offense can be based entirely on circumstantial evidence. 304 Kan. at 25.

K.S.A. 2016 Supp. 21-5209 provides that: "It shall be a defense to a prosecution under any statute that the defendant, as a result of mental disease or defect, lacked the culpable mental state required as an element of the crime charged. Mental disease or defect is not otherwise a defense."

K.S.A. 2016 Supp. 21-5413(a) defines battery as "(1) [k]nowingly or recklessly causing bodily harm to another person; or (2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." That section continues, in subsection (c)(3)(D), to specify that "battery, as defined in subsection (a) committed against a . . . city or county correctional officer or employee . . ." is battery against a law

5

enforcement officer, the crime of which Matthews was convicted in each case. The parties agree the State was required to prove Matthews acted "knowingly."

K.S.A. 2016 Supp. 21-5202(i) defines the culpable mental state when a crime requires proof that a defendant acted knowingly:

"A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'knowingly,' 'known,' or 'with knowledge' are general intent crimes."

Matthews argues his mental health issues generally kept him from having the needed culpable mental state because he thought he was defending himself against sexual harassment through "wave phenomena" and believed the result would be the end of the harassment.

In *State v. Pennington*, 281 Kan. 426, 435, 132 P.3d 902 (2006), the Kansas Supreme Court held it is irrelevant whether intent is formed rationally or whether it is formed based on delusions. In *Pennington*, the court upheld the district court's exclusion of expert testimony about Pennington's mental condition on the basis it was irrelevant. Although the expert—a psychologist who had twice examined Pennington—stated that Pennington had a "serious delusional disorder" and his "intent was formed based on delusional thinking," the psychologist expressed the opinion that Pennington was able to form the intent necessary to commit his crimes. 281 Kan. at 431-32. The defense argued that where intent is based on delusions, that intent is not rational or purposeful, but is mistaken or accidental. But the court held:

6

"The problem with this argument is that under the *mens rea* approach, it is no longer relevant whether intent is formed rationally or whether it is formed based on delusions. As the Court of Appeals' majority correctly recognized, intent formed on the basis of delusions may have provided a defense under the prior insanity approach, but not under the *mens rea* approach." 281 Kan. at 435.

Matthews argues *Pennington* does not control because it was decided before the recodification of the criminal code and the enactment of K.S.A. 21-5202, defining culpable mental states. But *Pennington* did not rely on any specific definition of intent. Rather, the *Pennington* court compared our current mental disease or defect defense with the prior approach. As the court stated, "intent formed on the basis of delusions may have provided a defense under the prior insanity approach, but not under the *mens rea* approach." 281 Kan. at 435. This court has relied on *Pennington* when a defendant claims his or her intent was formed on the basis of delusions. See *State v. Verstraete*, No. 106,856, 2013 WL 5507261, at *4 (Kan. App. 2013) (unpublished opinion); *State v. Shulka*, No. 102,398, 2011 WL 1196904, at *5 (Kan. App. 2011) (unpublished opinion).

Since Matthews frames his argument in terms of the sufficiency of the State's evidence to prove the necessary culpable mental state, we apply our standard of review for a sufficiency challenge and examine the evidence in the light most favorable to the State. By that measure, there was ample evidence for a rational fact-finder to find beyond a reasonable doubt that Matthews was aware of the nature of his conduct as well as the reasonably certain result of his conduct. Matthews attacked Godinez while Godinez was bent down to pick up the towels. Matthews repeatedly hit Godinez and then said, "That's what you guys get for messing with my asshole." When asked if he wanted or intended to hurt Godinez, Matthews responded, "I mean, I just—yeah." Matthews acknowledged that Godinez was "a little guy" and thus Matthews had to be the one to stop the altercation. Also, he wrote an apology letter to Godinez after the attack that said:

"If you knowingly have had nothing to do with law enforcement who have been assaulting me, I am truly and genuinely sorry for the physical altercation that happened. . . . It has recently occurred to me that maybe you had no idea what was going on. If this . . . is fact, I reiterate my apologies. Please forgive me. But if you are involved . . . God is great."

In the second altercation, Matthews hit Longenecker in the face with his handcuffs just as the officers were letting him out of the shower and he continued to struggle with them. Matthews said several times, "Are you laughing now, Officer Longenecker?" He also said he "took [it] easy on Godinez because he was an old man," but would not do the same for Longenecker.

Matthews' actions and testimony provided evidence that although he may have acted on the basis of distorted or delusional thoughts, he was nonetheless aware of the nature of what he did to the officers and the reasonably likely result of what he did. As in *Pennington*, the fact that Matthews may have acted on the basis of unsound reasoning is not relevant—there was clearly sufficient evidence that Matthews knowingly committed his crimes.

*Consecutive sentences*

Matthews next argues the district court abused its discretion by running the sentences in 15CR525 and 15CR941 consecutively. He argues the consecutive sentences were unduly harsh because he has mental health issues and should be allowed to seek treatment.

It is within the district court's discretion to order sentences imposed on the same day in separate cases to run concurrently or consecutively. K.S.A. 2016 Supp. 21-6606(a); *State v. Mosher*, 299 Kan. 1, 2, 319 P.3d 1253 (2014). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted

8

by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015), *cert. denied* 137 S. Ct. 164 (2016).

Matthews asserts no error of fact or law. The issue is whether no reasonable person would take the view adopted by the trial court. Matthews asks us to find that his apparent mental health problems show he needs treatment rather than prison. But in each of these cases, Matthews' attacks on the officers were violent and unprovoked. Matthews testified he wanted to hurt Godinez and during his attack on Longenecker said he would not take it easy on Longenecker like he did on Godinez. The attacks on the officers occurred in two distinct events, occurring almost three months apart. Based on those facts, we cannot say that no reasonable person would arrive at the district court's decision to sentence these incidents consecutively.

Affirmed.