NOT DESIGNATED FOR PUBLICATION

No. 122,569

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TERRY RAY YOUNG,
*Appellant.*

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed April 23, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Andrew R. Davidson*, assistant district attorney, *Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and CLINE, JJ.

PER CURIAM: Terry Ray Young was convicted by a jury of his peers of stalking and violating a protection from stalking order. On appeal, he argues there was insufficient evidence for the jury to convict him of these crimes. After reviewing the record, we find no merit to Young's arguments and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 29, 2019, Hutchinson police officers were dispatched to Laurie and Daniel Berner's home to investigate a report of trouble with a subject. At around 6:40 a.m., Laurie arrived home after working a night shift and noticed her neighbor, Young, approaching her vehicle. Laurie called her husband and then began recording Young's behavior as he was yelling outside the driver's side window of her car. Laurie was fearful of Young because she was alone, it was dark outside, and Young was preventing her from exiting her vehicle.

About a month prior to this incident, Laurie had requested a protection from stalking order against Young after family friends spotted Young on the Berners' property. Young was standing in the Berners' yard allegedly checking on their 11-year-old daughter who Young thought was home alone. The Berners installed video surveillance around their home after this incident. The district court issued a temporary protection order, and Young was served with both the stalking petition and the temporary order on January 4, 2019. A hearing on the protective order was scheduled for January 29, 2019.

After arriving at the scene on the morning of January 29, 2019, Officer Robert Winslow located Young in front of his residence, and Officer John Mies placed Young under arrest for violating Laurie's protection from stalking order.

The State charged Young with stalking, in violation of K.S.A. 2018 Supp. 21-5427(a)(3), a severity level 9 person felony under K.S.A. 2018 Supp. 21-5427(b)(3)(A); violation of a protection from stalking order, in violation of K.S.A. 2018 Supp. 21-5924(a)(6), a class A person misdemeanor under K.S.A. 2018 Supp. 21-5924(b)(1); and disorderly conduct, in violation of K.S.A. 2018 Supp. 21-6203(a)(3), a class C nonperson misdemeanor. The State subsequently dismissed the disorderly conduct charge.

*Laurie Berner's Testimony*

At trial, Laurie testified she had lived on North Park Drive for 14 or 15 years with her husband and 11-year-old daughter. The Berner family had lived next door to Young since 2008. Laurie explained she applied for a protection from stalking order against Young after an incident in December 2018.

On January 29, 2019, Laurie worked a night shift and headed home around 6:40 a.m., about 20 minutes earlier than usual. She pulled up to the curb at her residence in a vehicle she had owned for about four years. Young was standing on the edge of his property when Laurie arrived home and started walking to the driver's side of Laurie's car. Laurie testified Young scared her and she did not know what to do, so she called her husband who was inside their home at the time. Laurie stated Young was very close to her window, yelling and talking about root canals. She began recording the event on her cell phone for about two and half minutes and waited in her car until her husband came out of the house.

A court date was scheduled that afternoon on the petition for a protection from stalking order Laurie had filed against Young. Laurie testified she applied for the protective order because Young had been on her property a month before. The Berners installed a home security system because of Young's activities and behavior around their residence. The Berners' surveillance video showed Young walking near the property line until Laurie arrived home from work that morning.

*Daniel Berner's Testimony*

Laurie's husband, Daniel, corroborated Laurie's testimony and explained he received a phone call from his wife stating Young would not let her out of her car. When Daniel got outside, Young was about 100 feet away and walking toward his own

property. Daniel called the police, who arrived 15-20 minutes after the incident. Daniel testified he was concerned for his wife and daughter's safety.

*Law Enforcement Testimony*

Deputy David Post, a patrol sergeant in the civil process unit of the Reno County Sheriff's Department, testified he served Young with the temporary protection order at the beginning of January 2019 and made sure Young understood he was not to have contact with the person on the order, Laurie Berner.

Winslow testified he was dispatched to Park Street for a "PFA violation." After arriving at the scene, Winslow went to Young's residence and found Young standing in his front yard. Winslow asked Young whether he had been over by the Berners' property. In response, Young pointed toward the Berners' property and stated he went over there but did not go on their property. Young also told Winslow he was going for a walk that morning and Laurie was in her car at the time.

Mies testified he was dispatched to North Park Street for "trouble with [a] subject." Upon arrival, the Berners informed Mies of the protection order against Young, and Mies placed Young under arrest. Young told Mies he never stepped onto the Berners' property.

*Terry Young's Testimony*

Young chose to testify in his defense, and it conflicted with the other witnesses' statements. He explained he woke up early on the date of the incident to go for a walk and was walking in the street because there are no sidewalks. He stopped at the edge of his property line when he saw an unfamiliar vehicle approaching. Young claimed to be concerned because his house had recently been robbed. He approached the vehicle to

4

determine whether the driver was lost or needed help, but the driver never opened the door or rolled down the window. Young saw a light come on inside the vehicle, but he could not see inside.

Young claimed he did not recall telling Winslow he approached Laurie and further claimed he did not know her name until the State charged him. On cross-examination, however, Young admitted receiving the paperwork at the beginning of January ordering him to stay away from the Berners and their residence.

The jury found Young guilty of stalking and violating a protection from stalking order. The district court sentenced him to 15 months in prison for stalking and 12 months in the county jail for violating the protective order, with the sentences to run consecutive to each other.

Young timely appeals.

### DID THE STATE PRESENT SUFFICIENT EVIDENCE TO PROVE STALKING AND VIOLATION OF A PROTECTION FROM STALKING ORDER?

Young argues his convictions for stalking and violation of a protection from stalking order must be reversed because the State failed to present sufficient evidence to prove his convictions beyond a reasonable doubt.

In considering whether sufficient evidence supports a defendant's conviction, we review "'the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). In our evaluation, we do not "reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Kettler*, 299 Kan. 448, 472, 325 P.3d 1075 (2014).

A.    *Stalking Conviction*

Young argues the State failed to prove beyond a reasonable doubt (1) he recklessly approached the victim and (2) his actions would cause fear in a reasonable person to sustain his conviction for stalking.

The State charged Young with stalking under K.S.A. 2018 Supp. 21-5427(a)(3), which defines stalking as:

> "after being served with, or otherwise provided notice of, any protective order . . . that prohibits contact with a targeted person, recklessly engaging in at least one act listed in subsection (f)(1) that violates the provisions of the order and would cause a reasonable person to fear for such person's safety, or the safety of a member of such person's immediate family and the targeted person is actually placed in such fear."

Subsection (f)(1) contains a nonexclusive list of stalking actions, including following, approaching, or confronting the targeted person or a member of such person's immediate family; appearing in close proximity to the targeted person's residence; or trying to communicate with the targeted person in any way. K.S.A. 2018 Supp. 21-5427(f)(1)(B), (C), and (G).

Young contends the State failed to prove he committed the offense "recklessly" and simply argues he did not recklessly approach or confront Laurie because he did not know with whom he was speaking in the car. A person acts "'recklessly'" when such person consciously disregards a substantial and unjustifiable risk that a result will follow from the person's acts. K.S.A. 2020 Supp. 21-5202(j).

Laurie arrived home from work within 20 minutes of her normal arrival time in a vehicle she had owned for about 4 years. Laurie parked in front of her house, though it was near the property line. Young approached the driver's side of her vehicle and was

6

yelling and talking about root canals. Young's testimony was inconsistent as he claimed he was asking the driver of an unfamiliar vehicle if he or she was lost or needed help. But Winslow testified Young stated shortly after the incident he was going for a walk and tried talking to Laurie. Surveillance video shows Young standing around his property which also contradicts his testimony that he was out for an early walk.

It was the jury's job to evaluate the credibility of the evidence presented to it. Viewing this evidence in the light most favorable to the State, a rational juror could have found Young waited for Laurie to come home, recognized her vehicle pull up to the curb, and recklessly approached and confronted her, thus violating the protection order.

Young also argues the State failed to prove beyond a reasonable doubt his actions would cause fear in a reasonable person. Again, viewing this evidence in the light most favorable to the State, a rational juror could have found Young's actions would cause fear in a reasonable person. Young approached the vehicle and was yelling and talking irrationally for over two minutes. A jury could have rationally determined that a reasonable person could be placed in fear if such person pulled over the vehicle in the dark and an individual approached the vehicle while yelling and engaging in unusual behavior.

Sufficient evidence supports Young's stalking conviction.

B.    *Violation of a Protection from Stalking Order Conviction*

Young also argues the State failed to prove he knowingly violated a protection from stalking order. The State argues Young knew Laurie was in the vehicle because he told Winslow he tried to talk to Laurie.

The State charged Young with violation of a protection from stalking order contrary to K.S.A. 2018 Supp. 21-5924(a)(6), which defines the offense as *knowingly* violating a protection from stalking, sexual assault, or human trafficking order. A person acts "knowingly" when such person knows his or her conduct is reasonably certain to cause the result. K.S.A. 2020 Supp. 21-5202(i).

At trial, Winslow explicitly testified Young admitted he tried to talk to Laurie:

"Q.     Did you approach Mr. Young and ask him if he had been over by the Berners' property?
"A.     Yes, I did.
"Q.     And what did Mr. Young tell you?
"A.     He pointed toward their property and said that he had went over there and he never went on their property, he stayed in the street. And he, I asked if he talked to anybody while he was over there and he said yes, he tried to talk to Laurie."

Again, it was the job of the jury to evaluate the credibility of the witnesses, and a rational juror could have found Winslow's testimony more credible than Young's regarding his knowledge of the driver's identity when he approached the vehicle. Laurie was driving a vehicle she had owned for about four years and pulled up to the curb in front of her own house. Young had lived next to the Berners for over 10 years. While it is true the incident occurred early in the morning while it was dark outside, we are not permitted to reweigh the evidence or resolve evidentiary conflicts. See *Kettler*, 299 Kan. at 472. The jury could draw a reasonable inference the vehicle was not unfamiliar to Young, and it chose to convict him. Thus, there is sufficient evidence to support Young's conviction for violation of a protection from stalking order.

Affirmed.