NOT DESIGNATED FOR PUBLICATION

No. 117,547

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ADOLFO REMIGIO DIAZ,
*Appellant*.


MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed March 30, 2018. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., PIERRON and POWELL, JJ.


PER CURIAM: Adolfo Remigio Diaz appeals from his conviction, by a jury, of driving under the influence of alcohol (DUI). On appeal, Diaz contends that the prosecutor committed error by misstating the law to the jury. In addition, he contends that the State failed to present sufficient evidence to support his DUI conviction. While we find that the prosecutor misstated the law, we do not find that the misstatement was prejudicial under the circumstances presented. Furthermore, we find that the State presented sufficient evidence at trial upon which a reasonable finder of fact could conclude that Diaz was guilty beyond a reasonable doubt. Thus, we affirm.

1

FACTS

On March 12, 2016, around 3 a.m., Douglas County Deputy Philip Weinmaster was on patrol in Lawrence. Rain was falling at the time and the street was wet. While stopped at an intersection near 6th and Massachusetts Streets, Deputy Weinmaster observed a vehicle also stopped at the intersection and facing him. The vehicle turned its headlights on and off three times while stopped at the intersection. Ultimately, the driver of the vehicle had his headlights turned off as he began driving westbound on 6th Street.

Deputy Weinmaster turned around and began to follow the vehicle on 6th Street. The deputy stopped the vehicle a few blocks later. The deputy approached the driver and informed him that he was driving with his headlights off. When Deputy Weinmaster asked for a driver's license, the driver informed the deputy that he did not have a driver's license. Instead, the driver provided the deputy with a Mexican National Identification card that identified him as Diaz.

During this initial contact with Diaz, Deputy Weinmaster detected a strong odor of alcohol coming from the vehicle. In response to questioning, Diaz told the deputy that he had two drinks earlier that night. Deputy Weinmaster then asked Diaz to get out of the car and he complied. Because of the odor of alcohol on Diaz' breath, the deputy had Diaz take four field sobriety tests. According to Deputy Weinmaster, Diaz presented multiple indicators of intoxication and failed all four of the tests.

Deputy Weinmaster then requested that Diaz take a preliminary breath test. Prior to administering the test, the deputy gave three advisories to Diaz about his rights. After doing so, Diaz refused to take the preliminary breath test. At that point, Deputy Weinmaster placed Diaz under arrest for driving under the influence of alcohol. The deputy then took Diaz to the Douglas County jail.

At the jail, Deputy Weinmaster read Diaz the implied consent notices. After the required 20-minute deprivation period, Douglas County Deputy Jen Carlson performed an Intoxilyzer 8000 breath alcohol concentration test on Diaz. The report of the results of the test revealed under the heading of "g/210L BrAC" that Diaz' results were .248—which is more than three times the legal limit. Thereafter, Deputy Weinmaster booked Diaz into the Douglas County jail.

Subsequently, the State charged Diaz with three counts:

(1)     driving under the influence—a third offense, in violation of K.S.A. 2016 Supp. 8-1567(a)(2), or, in the alternative, in violation of K.S.A. 2016 Supp. 8-1567(a)(3);

(2)     refusal to take a preliminary breath test, in violation of K.S.A. 2016 Supp. 8-1012; and

(3)     driving without headlights when required, in violation of K.S.A. 2016 Supp. 8-1703.

A two-day jury trial commenced on December 14, 2016. At trial, the State offered the testimony of Deputy Weinmaster, who had arrested Diaz, and Deputy Carlson, who had performed the Intoxilyzer breath alcohol concentration test on Diaz. In particular, Deputy Carlson testified that Diaz had a breath alcohol concentration of .248. Additionally, the State offered the testimony of Lawrence Police Department Officer Richard Nichols, who testified that the State had certified the Intoxilyzer-Alcohol Analyzer used in testing Diaz's breath to be functioning properly at the time he was tested. The State also introduced eight exhibits, including a report of the results from Diaz's Intoxilyzer test.

In addition to other jury instructions, the district court instructed the jury as follows:

"In Count 1, the defendant is charged with operating a vehicle while under the influence of alcohol. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant operated a vehicle.

"2. The defendant, while operating the vehicle, had an alcohol concentration in his blood or breath of .08 or more as measured within three hours of the time of operating the vehicle.

"3. This act occurred on or about the 12th day of March, 2016 in Douglas County, Kansas."

"The phrase "alcohol concentration" means the number of grams of alcohol per 210 liters of breath."

After deliberating, the jury returned a guilty verdict on all charges. On February 3, 2017, the district court sentenced Diaz to a controlling sentence of 12 months, with release authorized after 120 days served and 12 months of postrelease supervision.

On February 11, 2017, Diaz filed this timely appeal.

ANALYSIS

*Prosecutorial Error*

On appeal, Diaz contends that the prosecutor misstated the law associated with blood alcohol concentration in the context of a DUI conviction during closing argument. He argues that the prosecutor erred when she argued that the evidence did not need to prove the unit of measurement for the results from the breath test. Furthermore, he argues that this error was not harmless as it undercut his only defense at trial. In response, the State contends that it did not misstate the law during closing arguments, and that, even if the prosecutor misstated the law, the misstatement did not rise to reversible error.

4

Additionally, the State argues that it provided sufficient evidence to support Diaz's conviction.

We evaluate claims of prosecutorial error using a two-step process:

"These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Here, Diaz complains about the following statement from the State's closing argument at trial:

"But the elements as you will see in the instructions, nowhere say grams. It says .08 or more and that's it. And we proved on that readout—on that printout that Deputy Carlson signed and said she signed, that he was—the defendant was at .248. Way above .08. So we have met our burden to show that .248 is more than .08 as measured within those three hours."

5

To convict the defendant under K.S.A. 2017 Supp. 8-1567(a)(2), the State must prove beyond a reasonable doubt that (1) Diaz operated or attempted to operate a vehicle within the state, (2) the alcohol concentration in his blood or breath was measured within three hours of the time operating or attempting to operate a vehicle, and (3) the alcohol concentration of his blood or breath measured ".08 or more." K.S.A. 2017 Supp. 8-1567(o)(1) defines the term "alcohol concentration" to mean "the number of grams of alcohol per 100 milliliters of blood or per 210 liters of breath." Moreover, as indicated above, the jury instructions did state that "[t]he phrase 'alcohol concentration' means the number of grams of alcohol per 210 liters of breath." Arguably, the statement that "the elements as you will see in the instructions, nowhere say grams" was technically correct because the element portion of the instructions did not mention grams. However, we find that the statement was misleading in that the instructions clearly stated that the unit for "alcohol concentration" is grams of alcohol per 210 liters of breath.

Nevertheless, we do not find this misstatement rises to the level of reversible error. A review of the record reveals that the district court properly instructed the jury on the elements that the State had to prove beyond a reasonable doubt to convict Diaz of operating a vehicle while under the influence of alcohol. Moreover, the district court properly instructed the jury regarding the statutory definition of the term "alcohol concentration" as defined by Kansas law. Furthermore, we note that Diaz did not object to the jury instruction and he has not challenged it on appeal.

We also note that the State presented sufficient evidence to prove beyond a reasonable doubt that Diaz operated a vehicle with "an alcohol concentration in his blood or breath of .08 or more." In addition to offering the testimony of the officer who performed the Intoxilyzer test as well as the officer who certified the machine, the State admitted the test results into evidence. Specifically, the Intoxilyzer report of the test results—which was admitted into evidence at trial as State's Exhibit 3—states on its face that Diaz' breath alcohol concentration test was reported in "g/210L BrAC." When this

6

report is viewed in light of the correct definition of "alcohol concentration" provided by the district court to the jury—as well as the other evidence offered by the State—we find no reasonable possibility that the error contributed to the verdict or had an effect on the outcome of the case. Accordingly, we conclude that the misstatement made during closing argument was harmless and did not prejudice Diaz' rights to a fair trial.

*Sufficiency of Evidence*

The second issue presented by Diaz on appeal is closely related to the first issue. Diaz contends that the State failed to present sufficient evidence to prove that "while operating the vehicle, [he] had an alcohol concentration in his blood or breath of .08 or more as measured within three hours of the time of operating the vehicle." Specifically, Diaz argues that the State failed to prove the unit of measurement of the breath alcohol content test. In response, the State points out that the report from the Intoxilyzer states the test results in terms of grams of alcohol per 210 liters.

When the sufficiency of evidence is challenged in a criminal case, we review the record in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). In making this determination, we do not reweigh evidence, resolve evidentiary conflicts, or make decisions regarding witness credibility. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Based on our review of the record in the light most favorable to the State, we find that there was sufficient evidence at trial upon which a reasonable fact-finder could conclude that Diaz was guilty beyond a reasonable doubt of operating a vehicle while

under the influence of alcohol. We note that the facts and legal issues presented in this case are very similar to the facts in *State v. Robinson*, No. 108,544, 2013 WL 4730277 (Kan. App. 2013) (unpublished opinion)—other than Diaz' alcohol content was substantially higher than Robinson's alcohol content. Similar to this case, the defendant in *Robinson* argued that the State failed to establish that his breath alcohol concentration was .081 grams of alcohol per 210 liters of breath.

As in the present case, the officer who conducted the breath test in *Robinson* testified at trial regarding the test results. Moreover, like this case, the State admitted the report of the test results from the Intoxilyzer—that showed the defendant's result under heading "g/210 L BrAC"—into evidence at trial. Furthermore, as in this case, the district court in *Robinson* instructed the jury on the definition of "alcohol concentration" under Kansas law. *Robinson*, 2013 WL 4730277, at *2.

In affirming the conviction, the *Robinson* court held:

"When the definitional instruction is considered in light of the information presented in the Intoxilyzer printout and [the officer's] testimony that the printout revealed an alcohol concentration of .081, the evidence presented at trial was sufficient to convince a rational factfinder beyond a reasonable doubt that the Intoxilyzer test result demonstrated that Robinson possessed an alcohol concentration of .081 grams of alcohol per 210 liters of breath. Thus, Robinson's DUI conviction was supported by sufficient evidence." *Robinson*, 2013 WL 4730277, at *2.

We find the reasoning of *Robinson* to be sound.

Here, the State offered testimony from the officer conducting the test that was .248, well above the legal limit of .08. Likewise, the State admitted the report that showed Diaz' test results of .248 under the heading "g/210L BrAC." Finally, the district court instructed the jury that alcohol concentration meant "grams of alcohol per 210 liters

8

of breath." As such, we find that the evidence presented at trial was sufficient to convince a rational fact-finder beyond a reasonable doubt that the Intoxilyzer test result demonstrated that Diaz possessed an alcohol concentration of .248 grams of alcohol per 210 liters of breath. Thus, we conclude that there is sufficient evidence in the record to support Diaz' DUI conviction.

Affirmed.