NOT DESIGNATED FOR PUBLICATION

No. 119,282

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

OLEKSANDRA OKREPKA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed August 9, 2019. Affirmed.

*Michael J. Bartee*, of Michael J. Bartee, P.A., of Olathe, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE, J., and STEVEN E. JOHNSON, District Judge, assigned.

PER CURIAM: Oleksandra Okrepka appeals from her conviction for violation of a protection from stalking order, contrary to K.S.A. 2015 Supp. 21-5924. On appeal, she collaterally attacks the underlying Temporary Order of Protection from Stalking under the guise of a sufficiency of the evidence argument. Specifically, Okrepka argues that the temporary order was defective because an outdated form was used that included references to statutes that had been recodified in 2010. For the reasons set forth in this opinion, we affirm Okrepka's conviction.

1

On May 26, 2016, the State of Kansas charged Oleksandra Okrepka with violation of a protective order—a class A person misdemeanor—in violation of K.S.A. 2015 Supp. 21-5924 and K.S.A. 2015 Supp. 21-6602(a)(1). The case was delayed for several months as concerns over Okrepka's mental health and competency were addressed. Ultimately, the district court convened a jury trial on March 5, 2018.

At trial, the State presented four witnesses and eight exhibits during its case-in-chief. Okrepka testified in her own defense and presented one exhibit. The evidence showed that Shahin Rasnavad purchased a home in an auction that was previously owned by Okrepka. The auction also included all of the personal items remaining inside the home. In May 2016, Rasnavad was granted a Temporary Order of Protection from Stalking against Okrepka after she attempted to enter his house, repeatedly drove by the house, and slept in her car outside the house. She also had managed to convince the post office to change the mailbox back to her name.

The evidence also showed that Okrepka was served with the temporary order on May 25, 2016. Nevertheless, Okrepka returned to Rasnavad's residence the following day. She first approached the back door and then walked to the front of the house. She called Rasnavad and told him she had "the paperwork for ownership of the house." In addition, she told him that she "want[ed] the key for the house." A neighbor witnessed Okrepka approach Rasnavad's home and he notified the police. An Overland Park police officer responded to the scene and asked Okrepka to leave. After she refused, Okrepka was taken to the adult detention center.

At the conclusion of the State's evidence, Okrepka motioned for acquittal. The district court overruled the objection and Okrepka testified in her own defense. She presented a copy of a divorce decree into evidence that indicated that the house had been

awarded to her. She testified that the house was later sold without her permission and that her belongings remained in the house after the sale. On cross-examination, the State asked Okrepka about a provision in the divorce agreement that required her to pay $55,000 to her ex-husband in the form of an equalization payment. Although she acknowledged the provision, she testified that she believed that it was unenforceable. Okrepka later admitted that her ex-husband had sued her in 2012 to enforce the equalization payment provision and she knew the house was being sold. In fact, she admitted that she received $11,000 from the sale.

Okrepka acknowledged that she was not to go to the house under the terms of the temporary protective order. She admitted to "driving by many times," as well as changing the mailbox, and to calling Rasnavad on May 26, 2016. After hearing the evidence, the jury convicted Okrepka of violation of a protective order. The same day, she was sentenced to six months in jail. However, the district court found that Okrepka had already "served that time" and waived all costs as well as fees.

ANALYSIS

On appeal, Okrepka contends that because the underlying temporary protection from stalking order does not comply with the requirements of K.S.A. 2015 Supp. 60-31a06, there is insufficient evidence in the record to establish her guilt beyond a reasonable doubt. When a defendant challenges the sufficiency of the evidence in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). To the extent to which this appeal involves statutory interpretation, our review is unlimited. *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 48, 392 P.3d 68 (2017).

Here, the criminal complaint filed against Okrepka alleged:

3

"That on or about the 26th day of May, 2016, in the County of Johnson and State of Kansas, OLEKSANDRA OKREPKA did then and there unlawfully, willfully and knowingly violate a protection from stalking order issued pursuant to K.S.A. 60-31a05, 60-31a06, a class A person misdemeanor, in violation of K.S.A. 21-5924 and K.S.A. 21-6602(a)(1). (violation of a protective order)"

The complaint complied with the requirements of K.S.A. 22-3201(b) and tracked the elements of the crime of violating a protection of stalking order. In particular, the complaint alleged that Okrepka knowingly violated the protection from stalking order and cited the relevant statutes under which the protection order was issued. The complaint also placed Okrepka on notice of the date and county in which she was alleged to have knowingly violated the protection order. Accordingly, we find that the charging document met the legal standard set out by the Kansas Supreme Court in *State v. Dunn*, 304 Kan. 773, 811-12, 375 P.3d 332 (2016).

Nevertheless, Okrepka seeks to use this criminal case to attack the validity of the underlying Temporary Order of Protection from Stalking by the district court. We find nothing in the record to suggest that she challenged the validity of the temporary protection from stalking order in the underlying civil case. Moreover, it does not appear that she challenged the validity of the temporary protection from stalking order before the district court in this criminal case.

At trial, Okrepka's only defense was mistake of fact. Specifically, she argued that she reasonably believed that the house belonged to her and that she had a right to be on the property. At no point below did Okrepka object to the contents of the temporary protective order or claim that she did not understand the terms of the order. Similarly, neither Okrepka nor her attorney claimed that the Temporary Protection from Stalking Order form used by the district court was defective.

4

In her brief, Okrepka acknowledges that "she did not argue the specific defect . . . now presented." In an attempt to escape the ramifications from failing to raise this argument below, she now argues that this is a sufficiency of the evidence issue. In the alternative, she argues that this court can still hear the merits of her claim because it is based on the "legal insufficiency" of the Temporary Order of Protection from Stalking. We note that as a general rule, a party is precluded from raising an issue on appeal that was not raised before the district court. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

Nevertheless, there are three traditional exceptions to raising an issue for the first time on appeal. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014) (detailing three exceptions, including [1] questions of law that are finally determinative in the case; [2] when consideration of issue is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and [3] the trial court may be upheld despite its reliance upon the wrong grounds or wrong reason). Here, Okrepka argues that the first two exceptions apply. For the purposes of this opinion, we will assume that these exceptions are applicable and we will address Okrepka's argument on the merits.

A review of the Temporary Order of Protection from Stalking leads us to the conclusion that it was sufficient to advise Okrepka of the following:

- Shahin Rasnavad filed a written verified petition against her requesting a Temporary Order of Protection from Stalking pursuant to K.S.A. 60-31a01 et seq.
- The district court had jurisdiction over the parties and over the subject matter.
- Rasnavad had established a prima facie case of stalking sufficient for the district court to enter a temporary order.

- She was not to "follow, harass, telephone, contact or otherwise communicate with [Rasnavad]."
- She was not to "interfere with the privacy rights of [Rasnavad] wherever [he] may be."
- She was not to "contact [Rasnavad], either directly or indirectly."
- She was not to "enter or come on or around the premises, the residence or workplace where [Rasnavad] reside[s], stays or works."

In addition to other things, the "Warnings to Defendant" attached to the Temporary Order of Protection from Stalking provided:

- The order was effective when signed by the judge.
- Law Enforcement Officers had been directed to immediately enforce the order.
- Violation of the order could constitute a "violation of a protective order as provided in K.S.A. 21-3843, and amendments thereto; stalking as provided in K.S.A. 21-3438, and amendments thereto; assault as provided in K.S.A. 21-3408, and amendments thereto; battery as provided in K.S.A. 21-3412, and amendments thereto; and criminal trespass as provided in K.S.A. 21-3721(a)(1)(C), and amendments thereto . . . ."
- Violation of the order could "result in prosecution and conviction under Kansas criminal statutes."
- Violation of the order could "also be punishable as contempt of this Court."
- Violation of the order could "subject the defendant to prosecution for such federal crimes, including but not limited to . . . Interstate stalking; and Interstate violation of a protection order."

6

We find these warnings to sufficiently place Okrepka on notice of her obligations under the Temporary Order of Protection from Stalking as well as the ramifications if she violated the order. In reaching this determination, we recognize that the Kansas Protection from Stalking Act "shall be liberally construed to protect victims of stalking and to facilitate access to judicial protection for stalking victims . . . ." K.S.A. 60-31a01(b).

It is undisputed that the Temporary Order of Protection from Stalking form used by the district court was several years old. In fact, it refers to some statutes that were recodified by the Kansas Legislature in 2010. We note that the recodification of the Kansas Criminal Code became effective on July 1, 2011. See L. 2010, ch. 136, § 1. The purpose of the recodification was to reorganize the statutes to place them in a more user-friendly order, to add clarity, to combine statutes to reduce their number, and to eliminate unnecessary statutes. Kansas Criminal Code Recodification Commission, 2010 Final Report to the Kansas Legislature, Vol. I, pp. 15 and 17. Thus, the practical effect of the recodification was to renumber and reorder the statutes, while generally leaving their substance intact.

To accomplish the recodification, our Legislature repealed the prior criminal statutes while simultaneously enacting the renumbered statutes. The Kansas Criminal Code contains a table that cross-references the old statute number with the new statute number assigned under the recodification. See K.S.A. 2018 Supp. Vol. 2A 2011—Criminal Code Table, pp. 423-28. Hence, although the Temporary Order of Protection from Stalking form used in this case contained references to several statutes that were repealed and replaced as part of recodification, we find that the use of the words "and amendments thereto" used in conjunction with these statutes was sufficient to point a reasonable person to the new statute number for the particular offense.

We also note that the Kansas Supreme Court rejected a somewhat similar argument in a case in which a repealed statute was cited in a charging document in the case of *State v. Salters*, 214 Kan. 860, 522 P.2d 436 (1974). In *Salters*, the defendant moved to dismiss the criminal complaint because it cited to two statutes that had been previously repealed. In affirming the district court's denial of the defendant's motion to dismiss, our Supreme Court noted that the repealed statutes and the proper statutes classified the crime the same. 214 Kan. at 860. In particular, our Supreme Court found:

> "Reference to a repealed statute [in the charging document] amounts to the same thing as 'omission' of reference to any statute [under K.S.A. 1973 Supp. 22-3201(2)], in view of the circumstances of this case. The crime charged was the same under the new statute as under the old; hence, appellant was not misled." 214 Kan. at 861.

Similarly, we find that Okrepka was not misled or prejudiced in this case by the citation to repealed and replaced statutes that are substantively the same. If reference to a repealed statute does not make a criminal complaint defective, it is reasonable to conclude that reference to a recodified statute does not make a civil temporary protection from stalking order defective. This is particularly true since the words "and amendments thereto" followed the repealed and replaced statutes, which would lead a reasonable person to the recodified statutory citation. Likewise, as indicated above, the practical effect of the recodification was to renumber and order the statutes while leaving the substance intact.

Affirmed.